## McLANE v. HAYDON.

(Court of Civil Appeals of Texas. Amarillo. Nov. 8, 1913. Rehearing Denied Dec. 6, 1913.)

1. ELECTION OF REMEDIES (§ 1*)—AVAILABLE REMEDIES.

To sustain a defense founded on the doctrine of estoppel by the election of remedies, it must appear that plaintiff had two remedies and that he undertook to pursue one; his supposition that he had a particular remedy and his effort to enforce it being immaterial unless the remedy in fact existed.

[Ed. Note.—For other cases, see Election of Remedies, Cent. Dig. § 1; Dec. Dig. § 1.*]

2. ELECTION OF REMEDIES (§ 11*)—EQUITABLE ASSIGNMENT—GARNISHMENT.

Where plaintiff had an equitable assignment of certain funds belonging to defendant in the hands of G., garnishment was not a proper remedy to recover the same, and his attempt to do so would not therefore constitute an election of remedies precluding him from thereafter pursuing a proper one.

[Ed. Note.—For other cases, see Election of Remedies, Cent. Dig. § 14; Dec. Dig. § 11.*]

3. JUDGMENT (§ 243*)—AGAINST ONE NOT A PARTY—PROPER AND NECESSARY PARTIES.

Where, in a suit to recover the balance of the price of a business, plaintiff proved that he had an equitable assignment of a fund in the hands of G., who was not a party to the suit, belonging to defendant, a provision in a judgment in favor of plaintiff that he was entitled to recover such funds from G. was a nullity as to him, but he being a mere stakeholder or trustee, and not a necessary, though a proper, party, failure to make him a party did not invalidate the judgment.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 428; Dec. Dig. § 243.*]

4. SALES (§ 347*)—ACTION FOR PRICE — DEFENSES.

In an action for the balance of the price of a business sold by plaintiff to defendant, allegations of the answer that defendant intended to pay the balance of the price with the proceeds of a homestead which had been purchased from money borrowed from his mother-in-law, and after taking possession of the business defendant had a nervous breakdown, when the mother-in-law "firmly and strenuously objected" to any more of the proceeds being invested in the business, were properly stricken as immaterial.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 962–972; Dec. Dig. § 347.*]

5. SALES (§ 348*)—ACTION FOR PRICE—RECONVENTION—ATTACHMENT AND GARNISHMENT—DAMAGES.

In an action for the balance of the purchase price of a business, defendant was entitled to plead, in reconvention, damages suffered by the wrongful issuance of certain attachments and a garnishment by plaintiff arising out of the same transaction.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 973–986; Dec. Dig. § 348.*]

Appeal from Hale County Court; W. B. Lewis, Judge.

Action by J. S. Haydon against John B. McLane. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Y. W. Holmes, of Plainview, for appellant. Fred C. Pearce and L. C. Penry, both of Plainview, for appellee.

HALL, J. On the 30th day of September, 1912, appellant and appellee entered into a written contract for the sale of a certain stock of confectionery and fixtures owned by appellee in Hale county. By the terms of the contract the parties were to invoice the stock, foot up the liabilities of the business, deduct the liabilities from the invoice price, and appellant bound himself to pay to appellee the difference in money. After the inventory was completed, it was ascertained that the balance due was $732. Upon failure of appellant to pay the amount, this suit was filed by appellee, setting up the terms of the contract, and that appellant had placed in the bank at Plainview his check for $200; that appellant advised plaintiff after the completion of the inventory that he did not have the money on hand to pay the balance but that he had sold certain real estate to one J. F. Garrison and was daily expecting Garrison to pay for the property; that it was then and there agreed that appellee should have and be entitled to the payment of the balance due out of the funds appel-

lant was to receive from said Garrison; and that the same should be paid to appellee by Garrison. Relying upon this agreement, appellee delivered to appellant the entire stock of goods and fixtures, which he would not have done but for said agreement; that, after taking charge of the business, appellant operated the same for his own use and benefit for about three weeks and sold therefrom about the sum of $600, which he appropriated to his own use; that appellant then advised appellee that he would not carry out the terms of the contract, stopped payment on his checks, and ordered Garrison not to pay plaintiff the sum of $750 or any sum whatever. There was a prayer for judgment for the sum of $750, with interest, and that the court order and adjudge the said sum of money above referred to as being in the hands of the said Garrison, to be subject to the payment of plaintiff's debt.

The appellant's answer to this petition contained numerous exceptions and answered specially that the contract between the parties provided that there should be deducted from the amount due defendant whatever debts might come against the business afterwards, and alleged that more than $200 in debts, which had not been listed by appellee at the time of the sale, had been ascertained since the sale was consummated. It is further alleged: That plaintiff fraudulently misrepresented the condition of the business and, in order to induce appellant to purchase the same and assume the debts, represented that it would require only about $600 in cash to pay said debts, whereas it required about $1,250 to pay the debts, $700 of which were then due. That these facts were not ascertained until long after appellant had taken possession of the business. The petition, however, asked no damages by reason of these fraudulent representations, nor is there a prayer for rescission of the contract. It is further alleged: That appellee falsely and fraudulently represented that the daily sales amounted to $25, which was untrue, and that he was induced by such fraudulent representations to enter into the contract and deceived thereby. That, about two weeks after appellant took possession of the business, he experienced a severe nervous attack and suffered a nervous breakdown on account of the high altitude and was advised by his physicians to leave the country. That he expected to pay for said business out of the proceeds of the sale of his homestead, but that the same had been purchased wholly with money borrowed from his mother-in-law, who lived with him, and for which he then still owed her, but says that when he experienced such nervous breakdown and it was found that he must leave the country, and the condition of the business had been found to be so different from what it had been represented by appellee to be, then his said mother-in-law firmly and strenuously objected to any more of the proceeds of the homestead being put into the business, for which reason defendant found it impossible to carry out his contract. That he offered the business back to appellee and at that time had not used one dollar of same for his own purposes, but instead had put every dollar taken in back into the business, together with about $100 of his own money, all of which he offered plaintiff and at the same time offered to render to him a full accounting, but that plaintiff refused to accept same under any consideration. The answer then pleads in reconvention for damages for the wrongful suing out of a writ of garnishment and two writs of attachment. This pleading was followed by a supplemental petition on the part of plaintiff, containing several exceptions. The court peremptorily instructed the jury to return a verdict in favor of plaintiff for the sum of $732 and interest and against defendant on his plea in reconvention.

The first question presented by the record for consideration is one of election of remedies. Upon the filing of the original petition, appellee sued out a writ of garnishment against J. F. Garrison upon the grounds that appellant was indebted to him and had no property within this state subject to execution sufficient to satisfy said debt and averred that J. F. Garrison was indebted to the appellant or that he had in his hands effects belonging to appellant.

[1] As stated in Bandy v. Cates, 44 Tex. Civ. App. 38, 97 S. W. 710: "In order to sustain a defense founded upon that doctrine [estoppel by election], it must be made to appear that the plaintiff actually had two valid, available, 'and inconsistent remedies, and that he undertook to pursue one. His supposition that he had a particular remedy and his effort to enforce it is immaterial and does not constitute an election, unless the remedy in fact existed"—and this rule is followed in a number of later cases. Sullivan v. Ramsey, 155 S. W. 580; Gibson v. Oppenheimer, 154 S. W. 694; Whitney v. Parish of Vernon, 154 S. W. 264. It is definitely settled that, if the plaintiff by mistake should adopt a remedy to which he was not entitled, he would not be estopped from amending his petition and resorting to the proper remedy. Wilson v. Carroll, 50 S. W. 222.

[2] Plaintiff's pleadings show an equitable assignment, which, if true, would transfer the right to the fund in Garrison's hands from appellant to appellee and carry with it the right on the part of appellee to file suit therefor. Under this state of facts, it is clear that garnishment was not a proper remedy for appellee to pursue. Being mistaken in his remedy, the rule governing where there had been an election of remedies does not apply.

[3] The next question to be considered is

raised indirectly by appellant in assignments based on the court's action in overruling exceptions and exceptions to the judgment rendered. Upon verbal instructions by the court, the jury returned a verdict as above stated, and, after reciting the verdict, the judgment proceeds as follows: "And it appearing to the court that the plaintiff's action is in addition to the fixing of his claim against defendant to subject, as against the defendant, to the payment thereof a certain fund in the hands of J. F. Garrison to the satisfaction of said claim, and it appearing to the court that the same was assigned to the plaintiff by defendant to the extent of plaintiff's claim against defendant, it is therefore ordered, adjudged, and decreed by the court that the plaintiff J. S. Haydon do have and recover of and from the defendant, John B. McLane, the sum of $732, with interest, etc. * * * It is further ordered, adjudged, and decreed by the court that, as between the plaintiff and defendant, the funds in the hands of said J. F. Garrison, described in the pleadings, the plaintiff is entitled to have the sum paid to him by said Garrison, to the extent of plaintiff's judgment herein against the defendant." In so far as this judgment attempts to control the action of Garrison with reference to the funds in his hands, it is clearly a nullity, since he was not a party to the suit. We have concluded that, while he was a proper party, he was not a necessary party defendant. He occupied the position of a trustee of the fund or a stakeholder and, so far as this record discloses, has made no claim whatever to any part of it. Shelby v. Burtis, 18 Tex. 644; Perryman v. Smith, 32 S. W. 349. But the failure to make Garrison a party to this suit will not invalidate the judgment. Hammond v. Tarver, 89 Tex. 290, 32 S. W. 511, 34 S. W. 729. He should, however, upon another trial be made a party, unless he should pay the fund into court.

[4] Appellee excepted to that part of appellant's amended answer which alleged that, about two weeks after taking possession of the business, he had a severe nervous attack and suffered a nervous breakdown and was advised by his physician that on account of the high altitude he would have to leave the country; that the business had been purchased with money borrowed from his mother-in-law, who "firmly and strenuously objected" to any more of the proceeds of the homestead being invested in the business. We think the court was correct in sustaining the exception to this part of the pleading. While the potency of a mother-in-law's ukase is recognized in our domestic affairs, we cannot permit it to be set up in the courts as justification for the breach of a binding contract, at least not yet; and, though a severe nervous breakdown is also a misfortune it cannot be held to be a defense in this case.

[5] The court also sustained exceptions to the appellant's plea in reconvention for damages for the issuance of attachments and the garnishment. While the pleadings are not as full as they might have been, we think they were sufficient to admit the evidence which was introduced on that issue. The contract introduced in evidence provided that appellant should pay for the business in cash when the amount (being the original cost, less the indebtedness) was ascertained, and that he should assume the debts against the business. Appellee did not deny this allegation nor plead any agreement that he was to pay any part of the debts. After the inventory was completed and it was ascertained that $750 was the amount due, it was discovered upon looking over the inventory and list of claims that an item of $17 freight had been entered upon the list twice. Afterwards appellant ascertained that there was a debt of $199 against the business due one Morrison, and another of $10 due Warren & Samson, and possibly others. The evidence was conflicting as to who should pay these items. There was also some evidence tending to sustain appellant's claim for damages on account of the attachments and garnishment writs being issued, and the evidence was also conflicting upon the issue as to whether or not the attachment writs had actually been levied. If, under the contract, appellant was bound to pay all of the debts against the business, the verdict peremptorily instructed against him is obviously too large; and, if he has suffered injury by reason of the attachment and garnishment proceedings, he had the right to have that issue also submitted to the jury. Appellant insists that the fund in the hands of Garrison, being the proceeds of the sale of his homestead, is exempt property. His pleadings do not raise this issue, and we cannot consider it here unless that fact is set up as an affirmative defense in the court below.

We think all of these issues, together with the issue as to whether or not there was an assignment of the fund, should upon another trial, under proper instructions, be submitted to the jury; and, because of the refusal of the court to do so, the judgment is reversed, and the cause remanded.