WALTER CONNALLY & CO. v. HOPKINS et al. (No. 1795.)

(Court of Civil Appeals of Texas. Texarkana. May 18, 1917. Rehearing Denied May 24, 1917.)

1. INSURANCE ☞580(2)—PROCEEDS OF POLICY—RIGHT OF LIEN CLAIMANTS.
 In absence of stipulation in policy a contract of fire insurance is personal to the insured, and does not indemnify the holder of a lien on the property insured.
 [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1441.]

2. INSURANCE ☞580(2)—RIGHT TO PROCEEDS—MORTGAGEE'S LIEN.
 As a general rule, if the mortgagor is charged with the duty of taking out insurance for the benefit of the mortgagee, the mortgagee will have an equitable lien upon the money due on a policy taken out by the mortgagor to the extent of the mortgagee's interest in the property destroyed.
 [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1441.]

3. CHATTEL MORTGAGES ☞164—INSURANCE FOR BENEFIT OF MORTGAGEE—"REQUEST."
 The action of the sellers of machinery in asking the buyer if he had insured the machinery, in accordance with requirements of a chattel mortgage, was equivalent to a request that the machinery be insured for the benefit of the sellers, and the buyer's reply in the affirmative was an assurance that he had so insured it.
 [Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 294–296.
 For other definitions, see Words and Phrases, First and Second Series, Request.]

4. ESTOPPEL ☞78(2)—GROUNDS—EQUITABLE LIEN.
 That a buyer of machinery, when he procured insurance, did not know of a stipulation

for insurance in favor of the sellers, in a chattel mortgage given by the buyer for the purchase money, cannot be urged by a third lienholder, claiming the proceeds of the insurance as against the sellers, as a reason why the ordinary rule of estoppel by contract does not apply.
 [Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 205.]

5. INSURANCE ☞580(2)—RIGHT TO PROCEEDS—LIEN CLAIMANTS.
 Where sellers of machinery stipulated in the contract of sale that it should remain personal property, and the purchase-money chattel mortgage taken in part payment contained the same provision, and a provision that the property should be insured for the benefit of the sellers, and in case of fire all other insurance carried against the property should be assigned and transferred to the sellers until they should be paid in full, the sellers had a lien on the proceeds of the policy superior to one holding a vendor's lien on the land upon which the machinery was situated, and who had an assignment which was indorsed on the policy after a loss occurred.
 [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1441.]

6. INSURANCE ☞580(2)—RIGHT TO PROCEEDS—EVIDENCE—SUFFICIENCY.
 A vendor's lien claimant has no claim to the part of the insurance in controversy because of a stipulation in a trust deed that the grantee would insure the property conveyed and transfer the insurance to the trustee, since that part of the insurance in controversy is on property acquired after the execution of such trust deed.
 [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1441.]

7. INSURANCE ☞665(1)—ACTION ON POLICY—EVIDENCE—SUFFICIENCY.
 In an action involving the right to proceeds of insurance policy covering machinery, as between the sellers of machinery who claimed an equitable lien on such proceeds by reason of a chattel mortgage and stipulations therein, and a vendor's lien claimant in whose favor a trust deed to the property upon which the machinery was situated had been executed, evidence *held* not to sustain a finding that the trustee, who was also the agent of the insurance company, after issuing the policy in question, instead of delivering it, retained possession in his capacity as trustee until after the fire occurred.
 [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1707.]

8. INSURANCE ☞594—ASSIGNMENT OF POLICY—INNOCENT PURCHASER.
 Where the consideration for the assignment of proceeds of an insurance policy was the then existing indebtedness of the assignor to the assignee, the assignee is not entitled to protection as an innocent purchaser of the claim evidenced by the policy.
 [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1455–1458, 1483, 1485.]

9. INSURANCE ☞580(2) — PROCEEDS — CONSTRUCTION OF CONTRACT.
 The effect of stipulations in a contract and chattel mortgage requiring the chattel mortgagor to insure the property in favor of the mortgagee was to create a lien in favor of the mortgagee on the proceeds of the policy, and not to transfer those proceeds to the mortgagee.
 [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1441.]

10. ELECTION OF REMEDIES ☞3(1)—CONSISTENT REMEDIAL RIGHTS.
 If a chattel mortgagee had a lien on the proceeds of an insurance policy by virtue of stipulations in the contract and mortgage, and

also a remedy by garnishment, the doctrine of election of remedies did not apply, and the remedy because of the stipulations was not waived when the chattel mortgagee sued out a writ of garnishment against the insurance company, since there is no inconsistency between different legal remedial rights, all of which are based on claim of title in plaintiff, or all of which are based on affirmance of title in defendant.

[Ed. Note.—For other cases, see Election of Remedies, Cent. Dig. § 3.]

11. GARNISHMENT ⬤�longdash26—PROCEEDS OF POLICY—ON HOMESTEAD.

As the machinery became realty and the property was a homestead, the proceeds of the policy were not subject to garnishment during the six months following the time when the mortgagor had a right to demand it of the insurance company.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. § 43.]

12. INSURANCE ⬤�longdash580(2)—PROCEEDS OF POLICY—GARNISHMENT BY LIEN CLAIMANT.

If the proceeds of the policy had not been exempt from garnishment, the service of the writ on the insurance company would have conferred on the chattel mortgagee the right to such proceeds to the extent of their lien superior to the right of the holder of the vendor's lien.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1441.]

Appeal from District Court, Hunt County; Wm. Pierson, Judge.

Action by F. N. Hopkins against Walter Connally & Co. and others. From the judgment, Walter Connally & Co. appeals. Reversed and remanded, with instructions.

The suit was commenced by appellee Hopkins against appellees Wilson and the Fire Association of Philadelphia and appellant Walter Connally & Co. by a petition filed December 23, 1915. Its principal purpose was to subject to the payment of indebtedness of Wilson to Hopkins a sum due by the insurance company on a policy of fire insurance issued by it on a gin plant, consisting, among other things, of machinery sold on credit by Hopkins to Wilson and one Patten and of other machinery sold on credit by Connally & Co. to said Wilson and Patten. The trial was to the court with a jury. It appears from his findings that the facts were as follows: August 9, 1913, Hopkins, by a warranty deed, conveyed certain land in Wood county and a gin plant situated thereon to J. F. Wilson and W. H. Patten, receiving as part payment therefor Wilson and Patten's six notes, five for $1,500 each, and one for $2,000, secured by a vendor's lien expressly retained in both the deed and notes. August 13, 1913, Wilson and Patten, to further secure the notes, conveyed the property to D. S. Armstrong as trustee. In the instrument evidencing this conveyance Wilson and Patten agreed to—

"keep the buildings and improvements on the above-described premises insured against loss by fire in some solvent insurance company or companies to the extent insurance can be obtained thereon, and will transfer the insurance or an amount thereof equal to the amount due on said notes and deliver the policies to said D. S. Armstrong, trustee, with loss, if any, payable to said trustee as his interests may appear."

January 2, 1914, Wilson and Patten entered into a contract with Walter Connally & Co. by the terms of which they agreed to purchase certain gin machinery of said Connally & Co., and in accordance with which they paid to Connally & Co. $1,000 in cash, delivered to Connally & Co. old machinery of a similar kind which had formed a part of the gin plant conveyed to them by Hopkins at a valuation of $1,100, and made and delivered to Connally & Co. their four promissory notes, two for $598 each, payable November 1, 1914 and 1915, respectively, and two for $600 each, payable December 1, 1914, and December 1, 1915, respectively. In the instrument evidencing the contract of sale Wilson and Patten agreed to keep the property they purchased of Connally & Co. fully insured against fire until the notes they were to execute were paid, the loss, if any, to be payable to Connally & Co. as their interest appeared, and further agreed to deliver the policy evidencing such insurance to Connally & Co. at Tyler. In the contract was a stipulation that a failure or refusal to insure the property should operate to authorize Connally & Co. to declare due and payable at Tyler the part of the purchase price of the machinery evidenced by the notes to be executed by Wilson and Patten, and a stipulation that the machinery "should not become realty or a fixture to realty, but should remain personal, and the title to the same should remain in Walter Connally & Co. until paid for." At the time Wilson and Patten entered into the contract with Connally & Co., and before the machinery sold to the former was delivered to them, an agent of the latter in Tyler telephoned Hopkins in Alba, and advised him (Hopkins) that Connally & Co. were contracting with Wilson and Patten to sell them the machinery, and to accept as part payment by Wilson and Patten therefor machinery at a valuation of $1,100 then in the plant Hopkins had sold them. Hopkins, in the conversation over the telephone, consented to the arrangement, and agreed that the old machinery in the plant he had sold to Wilson and Patten "might be removed and taken for such purpose." Connally at that time "knew of Hopkins' deed of trust and vendor's lien notes," but the evidence failed to show that Hopkins knew anything about the terms of the contract between Wilson and Patten and Connally & Co. for the sale of the machinery; and he did not know of the provision in that contract—

"in reference to keeping said property insured for the benefit of Walter Connally & Co., nor of the provision making the property so sold by Walter Connally & Co. personal property, nor of the fact that Walter Connally & Co. were retaining a mortgage lien thereon or title thereto until paid for."

Connally & Co. knew at the time they contracted to sell the machinery to Wilson and Patten that it was "to be placed in the gin

plant" they purchased of Hopkins "to replace the old machinery they were to receive in part payment"; and they also knew—

"that it was necessary to have the machinery so placed in order to make it a complete plant to enable the owners thereof to operate the same, and the said new machinery was to be connected with said gin plant and connected with the soil in such ways as to injure the real estate if the same should be removed, and I find," the court added, "that said machinery was so connected with the plant and with said real estate."

January 27, 1914, Patten sold and conveyed his interest in the property he and Wilson had purchased of Hopkins and in the machinery they had purchased of Connally & Co. to Wilson, who assumed the payment of the indebtedness against same. March 13, 1914, to secure the notes executed by him and Patten, Wilson made and delivered to Connally & Co. a "chattel mortgage covering the property" Connally & Co. had sold to him and Patten. This mortgage was filed for registration in Wood county on March 24, 1914. Among other things, it contained recitals and stipulations as follows:

"Said machinery is located and to be located at Alba, in Wood county, Texas, and to remain personalty however and wheresoever located; and it is expressly agreed and understood that future purchases by me of machinery, extras, fittings, attachments and goods from Walter Connally & Co. are hypothecated and mortgaged to said Walter Connally & Co. for the purchase money thereof and for this debt. And it is further expressly agreed and understood that the above-described machinery is hereby hypothecated and mortgaged to said Walter Connally & Co. to secure such other sums of money as I, or we, may now be due and owing, or that may hereafter become due to said Walter Connally & Co. by the purchase of machinery, supplies or otherwise. I also agree immediately upon the request of Walter Connally & Co. to insure the machinery above described for an amount equal to the indebtedness due to Walter Connally & Co., the loss, if any, payable to said Walter Connally & Co. as their interest may appear; and in case of fire all other insurance carried by me against said property is hereby assigned, set over and transferred to Walter Connally & Co. until they are paid in full."

Except so far as they might be charged therewith by reason of its registration, neither Hopkins nor the insurance company had any notice of the making of the mortgage or its contents. Both the contract between Wilson and Patten and Connally & Co. and the mortgage from Wilson to Connally & Co. were on printed forms used by said company. "Wilson, while charged in law with the contents of said instruments," the court said,

"never in fact read the same, and never had any actual notice of the fact that either of them contained the provisions aforesaid (referring to the provisions in said instruments specified and set out in the foregoing statement), until after the fire in question occurred; that there was no agreement between defendant Walter Connally & Co. and defendant Wilson by which said property was to be insured for the benefit of said company, except in so far as same may exist on account of said provisions; that the matter was never discussed or agreed upon, and that said company never requested Wilson to have said property insured for their benefit, although they did inquire of him on one occasion

whether or not he had the property insured and were informed that it was insured."

June 2, 1915, the Fire Association of Philadelphia, by its agent said D. S. Armstrong, at the instance of Wilson, issued its policy insuring the gin plant against fire until June 2, 1916, in the sum of $4,000. By the terms of the policy $1,000 of the amount thereof covered the gin building and boiler rooms, $2,000 "fixed and movable machinery of all kinds," and $1,000 the engine and boilers, including "foundation and settings, smokestack, heater and pumps." From the time they purchased the property of Hopkins, Wilson and Patten kept it insured. The policy above referred to as having been issued June 2, 1915, was—

"in the same language, and contained the same description of the property, that had been used and contained in the several policies previously issued on said property. The amount of insurance was the same in each policy."

When Armstrong, as agent of the insurance company mentioned, issued the policy, he retained the possession thereof in his capacity as trustee in the deed from Wilson and Patten, hereinbefore referred to. It was in his possession as such trustee November 10, 1915, when the engine and boilers and their foundations and settings were damaged and the other property covered by the policy was destroyed by fire, November 12, 1915. Connally & Co. requested Wilson to transfer his claim under the policy issued June 2, 1915, to them. He refused to do so. On the same day, to wit, said November 12, 1915, Connally & Co. commenced a suit against Wilson and Patten in the district court of Smith county on the notes they had given for part of the purchase price of the machinery Connally & Co. sold to them, and on that day caused a writ of garnishment to be issued against and served upon said Fire Association of Philadelphia. The suit resulting in the judgment from which this appeal is prosecuted was commenced by Hopkins in Hunt county by a petition filed December 23, 1915. After Connally & Co. were served with a citation notifying them of the commencement of the suit by Hopkins in Hunt county, they filed a petition in their garnishment suit against the insurance company then pending in Smith county, to make Hopkins and Wilson parties thereto, alleging that the indebtedness of the insurance company on account of the policy was to Wilson, and praying that Hopkins and Wilson be required to answer in the garnishment suit. Because he was thus made a party to Connally & Co.'s garnishment suit against the insurance company in Smith county, it was necessary for Hopkins to employ lawyers to represent him and to go in person to Smith county in February, 1916, to be present at the trial thereof in the district court of that county, resulting in expense to him of more than $200. February 8, 1916, judgment was rendered in the suit in Smith county commenced by Connally & Co. against Wilson and Patten in favor of the

former against the latter for $2,479, and a foreclosure of the lien of the chattel mortgage executed by Wilson on the machinery sold to him and Patten by Connally & Co. At the time the judgment appealed from was rendered the judgment of the district court of Smith county in favor of Connally & Co. against Wilson and Patten, except $275 thereof, was unsatisfied. November 13, 1915, Wilson was, and at the time of the trial of this cause was still, indebted to Hopkins on account of the vendor's lien notes executed by him and Patten in the sum of more than $5,000. On the day last mentioned said Wilson, "in recognition of the provisions of the deed of trust" to Armstrong, and to reduce his said indebtedness to Hopkins, by writing on the policy transferred his interest in it and claim it evidenced against the insurance company on account of damage to and destruction by fire of property it covered to Hopkins. In an adjustment of the loss by the fire it was agreed that $3,750 would cover same. The land and gin plant conveyed by Hopkins to Wilson and Patten was Wilson's "business homestead" at the time the fire occurred, and had been ever since Hopkins conveyed the property to him and Patten. "The property destroyed by fire," quoting the language of the court, "including the machinery sold by Connally & Co. as aforesaid and annexed to said plant, was, at least so far as the interest" of Hopkins "herein is concerned, and as to the insurance company, real estate and a part of the homestead aforesaid." On the facts found by him, the court concluded as a matter of law that Hopkins was entitled to recover of the insurance company the $3,750 due by it on the insurance policy, and that Connally & Co. were not entitled to recover any part of same or to any relief against the other parties. The court further concluded that the insurance company was entitled to an injunction against Connally & Co. restraining them from further prosecuting their garnishment suit against it pending in the Smith county district court. Judgment in accordance with those conclusions was rendered by the court, and Connally & Co. thereupon prosecute this appeal.

R. L. Porter, of Greenville, and Price & Beaird, of Tyler, for appellant. W. W. Campbell, of Alba, and Clark & Leddy, of Greenville, for appellees.

WILLSON, C. J. (after stating the case as above). [1, 2] The controversy between Hopkins on the one side and Connally & Co. on the other side was as to which of them had the superior right to the part of the proceeds of the policy representing insurance on the machinery the latter sold to Wilson and Patten. In determining that controversy it was immaterial whether the lien on the machinery claimed by Hopkins was superior to that claimed by Connally & Co. or not; for a lien on the machinery of itself conferred no right

on the holder thereof to the proceeds of the policy. A contract of fire insurance is personal to the insured, is for his indemnity, and not for the indemnity of the holder of a lien on the property insured. Cameron v. Fay, 55 Tex. 59; Ward v. Goggan, 4 Tex. Civ. App. 274, 23 S. W. 479; Gassaway v. Browning, 175 S. W. 481; 1 Cooley's Briefs on Law of Insurance, 82, 83; 2 Id. 1064, 1065; 4 Id. 3699. Therefore whether the claim of Hopkins to said proceeds was superior to that of Connally & Co. or not depended upon whether he had acquired a right thereto by contract with the insured (Wilson), and, if he had, whether the right he so acquired was superior to the right thereto which Connally & Co. had acquired (1) by contract with said Wilson, and (2) by the garnishment proceedings against the insurance company in their suit against Wilson and Patten in the district court of Smith county.

In determining the controversy we will first consider the claim of Connally & Co., in so far as it was based on (1) the contract covering the sale by them of the machinery to Wilson and Patten, and (2) the mortgage to them by Wilson and Patten would keep the machinery fully insured against fire, the loss, if any, payable to them (Connally & Co.) as their interest appeared, until notes representing purchase money thereof were paid, and of the stipulation in the mortgage that Wilson would, upon their request, insure the machinery for an amount equal to his indebtedness to them, the loss, if any, payable to them as their interest appeared, was to entitle them to said part of the proceeds of the policy. That the stipulations had the effect claimed, unless the contentions made by Hopkins presently to be noticed should be sustained, is well settled by the authorities. 4 Cooley's Briefs on Law of Insurance, 3703 et seq. and authorities there cited; Wheeler v. Ins. Co., 101 U. S. 439, 25 L. Ed. 1056. "An agreement," said Mr. Cooley,

"between the mortgagor and mortgagee, by which the mortgagor is charged with the duty of taking out insurance for the benefit of the mortgagee, will charge the proceeds of any insurance taken out by the mortgagor with a lien in favor of the mortgagee."

And in the Wheeler Case the Supreme Court said:

"It is settled by many decisions in this country that if the mortgagor is bound, by covenant or otherwise, to insure the mortgaged premises for the better security of the mortgagee, the latter will have an equitable lien upon the money due on a policy taken out by the mortgagor to the extent of the mortgagee's interest in the property destroyed."

[3] One of the contentions of Hopkins, referred to above, is that the contract of sale and the mortgage should be treated as one instrument, and that, construed as parts of one and the same instrument, the stipulations did not bind Wilson to insure the machinery for Connally & Co.'s benefit unless the latter requested him to do so. Hopkins

refers to the finding of the court that Connally & Co. did not request Wilson to so insure the property, and insists it therefore appeared that they did not acquire a right to the insurance on the machinery by reason of the stipulations. But, while the court found that Connally & Co. "never requested Wilson to have said property insured for their benefit," he also found that "they [Connally & Co.] did inquire of him [Wilson] on one occasion whether or not he had the property insured, and were informed that it was insured." If the two instruments should be treated as one, and the stipulations as meaning what Hopkins contends they meant, we think the facts found by the court showed a request within such meaning. The conclusion of the court from the facts he found, that Connally & Co. did not request Wilson to insure the property for their benefit, was not, we think, warranted. Under the circumstances of the case, we think Connally & Co.'s asking Wilson if he had insured the machinery should have been construed as a request to insure it for their benefit as he had agreed to, and Wilson's reply as an assurance that he had so insured it.

[4] The other contention made by Hopkins is that the stipulations did not create an equitable lien in favor of Connally & Co. because it appeared, as found by the court, that Wilson did not know when he procured the insurance that the contract and mortgage contained such stipulations. As supporting this contention, Hopkins cited Dunlop v. Avery, 89 N. Y. 592, and Stearns v. Ins. Co., 124 Mass. 61, 26 Am. Rep. 647. We regard the contention as unsound, and do not think the cases cited, when their facts are considered, support it. No reason appears in the record before us why Wilson, having executed the contract and mortgage, should be heard to deny knowledge of stipulations they contained as a basis for relief against the effect of such stipulations.

[5] It follows from what has been said that we are of the opinion Connally & Co., by virtue of the stipulations referred to, had a lien on the part of the proceeds of the policy which represented insurance on the machinery they sold to Wilson and Patten.

[6, 7] The right of Hopkins to the part of the proceeds in question must be referred, we think, entirely to the assignment to him indorsed by Wilson on the policy November 13, 1915, after the fire occurred. It cannot be referred to the stipulation in the trust deed to Armstrong that Wilson and Patten would insure the property he (Hopkins) had conveyed to them and transfer the insurance to the trustee, Armstrong, with loss, if any, payable to him as his interest appeared, because the part of the insurance in controversy was not insurance on that property, but was insurance on property Connally & Co. had conveyed to Wilson and Patten. 4 Cooley's Briefs on Law of Insurance, 3702, and authorities there cited. Nor can a right in

Hopkins be referred to Armstrong's possession of the policy before and at the time the fire occurred. The claim that such possession conferred such a right on Hopkins is predicated upon the finding by the court that Armstrong, after issuing the policy (to Wilson) as agent of the insurance company, retained possession thereof in his capacity as trustee until after the fire occurred. The finding is attacked by Connally & Co. on the ground that there was no evidence to support it. We think there was none. It appeared from the testimony that Armstrong, after he issued the policy as the agent of the insurance company, instead of delivering it to Wilson, retained possession of it, but there was no testimony showing or tending to show that he ever held possession of it in his capacity as trustee in the deed to him from Wilson. The policy could not have become a pledge in Armstrong's hands as trustee without some action on the part of Wilson indicating a desire that as trustee he should hold it as security for the indebtedness specified in the trust deed. We have found no testimony in the record showing, or tending in the least to show, that Wilson ever authorized Armstrong, who held the policy for delivery to him, to hold it instead as the trustee named in the deed and as a pledge to further secure the indebtedness to Hopkins.

[8] So, it appears, the claim of Connally & Co. to the part of the proceeds of the policy in controversy was based on a lien which attached thereto the moment the loss of the machinery by fire occurred, and that the claim of Hopkins was based on an assignment to him of the policy made by Wilson on the day after the fire occurred. The nature of the respective claims being as stated, it is clear, we think, that the right of Connally & Co. to the proceeds in question was superior to that of Hopkins, unless the latter was entitled to claim protection as an innocent purchaser of the claim evidenced by the policy. Without respect to the question as to whether he was without notice of Connally & Co.'s right or not, the fact that the consideration for the assignment to him was then existing indebtedness of Wilson to him would, it seems, be sufficient reason for denying him such protection. 4 Cooley's Briefs on Law of Insurance, 3706.

[9] Hopkins insists, however, that if Connally & Co.'s right as lienholders to the fund in question was superior to his, they were estopped from asserting it as against him. The contention is that Connally & Co. had a choice of remedies for the collection of the debt Wilson and Patten owed them, and that they waived the one they had because of the stipulations in the contract of sale and mortgage, when they sued out the writ of garnishment against the insurance company and made Hopkins a party to the proceedings at an expense to him of more than $200. If it should be conceded that Connally & Co. had two dif-

ferent coexisting remedial rights, we think they were not inconsistent, and therefore that the doctrine of election of remedies invoked by Hopkins did not apply. As we understand it, the effect of the stipulations in the contract and mortgage referred to was to create a lien in favor of Connally & Co. on the part of the proceeds of the policy representing insurance on the machinery, and not, as Hopkins assumes, to transfer those proceeds to them. "All actions," said the writer of the article in Cyc. 257,

"which proceed upon the theory that the title to property remain in plaintiff are naturally inconsistent with those which proceed upon the theory that title has passed to the defendant. But there is no inconsistency between different legal remedial rights, all of which are based upon claim of title to property in plaintiff or all of which are based upon the affirmance of title in defendant."

[10] But we think Connally & Co. did not have a remedy by garnishment. The court found that the land and machinery purchased by Wilson and Patten of Hopkins, and the machinery purchased by them of Connally & Co., which he further found, had become realty, was Wilson's homestead at the time the fire occurred.

[11] The property being homestead, the insurance on it was not subject to garnishment during the six months following the time when Wilson had a right to demand it of the insurance company. Article 3787, Vernon's Statutes; Cameron v. Fay, 55 Tex. 59; Ward v. Goggan, 4 Tex. Civ. App. 274, 23 S. W. 479; Ins. Co. v. Jameson, 6 Tex. Civ. App. 282, 25 S. W. 307; Chase v. Swayne, 88 Tex. 218, 30 S. W. 1049, 53 Am. St. Rep. 742; Geise v. Ins. Co., 107 S. W. 555; Stratton v. Ins. Co., 182 S. W. 4; Griffin v. Williams, 142 S. W. 981; McLane v. Haydon, 160 S. W. 1146; Rowell v. Smith, 123 Wis. 510, 102 N. W. 1; Zimmerman v. Robinson, 128 Iowa, 72, 102 N. W. 814, 5 Ann. Cas. 960; 15 Cyc. 262.

[12] It may not be out of place to say here that, had the proceeds of the policy not been exempt from garnishment, the service of the writ on the insurance company would have conferred upon Connally & Co. a right to the part of same in controversy superior to the right thereto in Hopkins. Gause v. Cone, 73 Tex. 239, 11 S. W. 162.

The judgment will be reversed, and judgment would be rendered here if the amount of the part of the proceeds representing insurance on the machinery described in the contract of sale between Wilson and Patten and Connally & Co. and in the mortgage from Wilson to Connally & Co. sufficiently appeared from the record sent to this court. As it does not, the cause will be remanded, with instructions to the court below to ascertain the amount and render judgment for Connally & Co. therefor, or such part thereof as may be necessary to satisfy the indebtedness of Wilson and Patten to said Connally & Co.