## FIDELITY & GUARANTY INS. CORPORATION v. SUPER-COLD SOUTHWEST CO.

No. 5984.

Court of Civil Appeals of Texas.
Amarillo.

Nov. 7, 1949.

Rehearing Denied Dec. 12, 1949.

Chilton Bryan, Houston, for appellant.
Dee Brown Walker, Dallas, for appellee.

STOKES, Justice.

On February 24, 1947, Fred A. Trammell purchased from appellee, Super-Cold Southwest Company, certain meat market equipment for which he paid to appellee $259.20 in cash and executed a promissory note in the sum of $2090.13. To secure payment of the note Trammell executed and delivered to appellee a chattel mortgage in which, among other things, Trammell agreed to maintain fire insurance for the protection of appellee's interest. It was further provided that, if he failed to procure the insurance, he would pay the premium therefor on demand, which should also be secured by the chattel mortgage and that the proceeds of any such insurance should be applied to the replacement of the

insured property or to the payment of the note secured by the chattel mortgage.

On August 21, 1947, Trammell procured the issuance by appellant of a policy of fire insurance in the sum of $1500 upon the property he had purchased from appellee, but the policy did not contain a provision that it was payable to appellee as its interest might appear.

On December 13, 1947, at 12:05 A.M., Trammell's grocery store, including the equipment he had purchased from appellee, was totally destroyed by fire. Trammell's store, stock of goods and the equipment purchased from appellee, were located at Houston, and the insurance policy was written by Jim Tucker & Company, appellant's local agents. Later in the day upon which the fire occurred, appellee's agent and sales manager learned about it and, after inspecting the premises and observing the property was a total loss, he informed Jim Tucker & Company of it and was directed by them to notify General Adjustment Bureau of Houston, an adjusting concern, the members of which were the regular adjusters for the appellant. The sales manager talked with Wesley Cole of the adjustment bureau, who assumed to handle the adjustment, and was instructed by Cole to write him a letter, enclosing three copies, stating the kind, character and amount of appellee's claim, and Cole told the sales manager that appellee would be protected. The letter was furnished in accordance with the instruction in which the equipment was described, and the request made that appellee be included in the adjustment and payment of the loss. The sales manager also wrote a similar letter to the Jim Tucker & Company. Efforts were then instituted to locate Trammell, the insured, but it appears that, when he realized the entire proceeds of the insurance policies would be consumed in the payment of his creditors, he lost all interest in it and made no effort to assist them in adjusting and collecting the amounts due on the various insurance policies held by him. In fact Cole, the adjuster, was unable to locate Trammell or procure his assistance in making out notices

and proofs of loss or furnishing any other information necessary to adjust it.

The policy contained a provision that, within 91 days after the loss, unless the time was extended in writing, the insured should render to the company a proof of loss, signed and sworn to by him, revealing to the best of his knowledge and belief the time and cause of the loss; the interest of the insured and all others in the property, including any encumbrances thereon; all contracts of insurance, whether valid or not, covering the property; the actual cash value of each item and the amount of loss thereto; and by whom and for what purposes the building was occupied at the time of the loss.

In February, 1948, within the 91 day period provided by the policy, appellee employed Curtis White as its attorney to handle its claim. White discussed the matter with Charles Pearson, who was state agent for the appellant, and was told by Pearson that appellant would pay the amount due on the policy, but that it wished to avoid a double payment. He suggested to White that a writ of garnishment be filed and served upon appellant, and it was agreed between them that a friendly suit in garnishment would be filed by appellee. White had been employed in other legal matters at various times by appellant and he informed Pearson that, if there was to be a contest of appellee's claim, he could not represent either party. With this understanding, White filed suit against Trammell upon the balance due on the note of $1747.75, and instituted the instant suit in garnishment against the appellant on February 26, 1948. On a number of occasions, after the suit was filed, White discussed with Pearson the matter of depositing the proceeds of the policy in the registry of the court and Pearson deferred the matter until August, 1948, when he told White that appellant would decline to pay the loss because proof of the loss had not been filed within the 91 days provided by the policy. At no time prior to August, 1948, was White or anyone else connected with appellee informed that appellant would require formal proof of the loss from Trammell or appellee and, when White was so informed by Pearson, White withdrew from the case and appellant was so notified.

In July, 1948, a representative of Zero Zone Company, another creditor of Trammell, procured Trammell to go with him to the office of adjuster Cole in Houston and offered to file the proof of loss or do whatever else that might be necessary to acquire the proceeds of the insurance policy, but Cole declined to accept it and referred them to appellant's attorney. On September 10, 1948, appellee's attorney mailed to appellant a proof of the loss and, a few days later, he received a letter from appellant's attorney in which the proof was returned and appellee's attorney informed that the loss would not be paid.

On May 21, 1948, a judgment by default was rendered against Trammell in favor of appellee upon the note for the sum of $2009.91 with interest thereon from February 25, 1948 and costs of suit. The garnishment suit against appellant was tried by the court, without the intervention of a jury, on February 10, 1949, and judgment was rendered in favor of appellee for the sum of $1050 on March 7, 1949. Appellant duly excepted to the judgment and perfected an appeal to the Court of Civil Appeals for the Fifth District at Dallas, and the case has been transferred to this court by order of the Supreme Court.

Numerous assignments of error are presented by the briefs and urged by appellant, but we do not deem it necessary to discuss them in detail. The controlling issues present two questions, viz.:(a) Whether or not appellee was entitled to a judgment under its garnishment of appellant upon the fire insurance policy issued by the latter to Trammell; and (b) whether or not formal proof of the loss, as required by the terms of the policy, was waived by appellant.

Appellant contends that the appellee could not acquire by a writ of garnishment any greater right of recovery under the policy than Fred A. Trammell, the insured, had and that Trammell had no right to recover judgment upon the policy because he failed to comply with its terms by furnishing to appellant, within 91 days after the property was destroyed by fire, a

proof of the loss. It has been held many times by the courts of this state and practically every other state in this country that an agreement between a mortgagor and a mortgagee under which the mortgagor is charged with the duty of procuring insurance upon the mortgaged property for the benefit of the mortgagee, will encumber the proceeds of any insurance so procured by the mortgagor with a lien in favor of the mortgagee. In such cases it is the duty of the mortgagor to have a provision inserted in the policy that the proceeds shall be payable to the mortgagee as his interest might appear but, where he fails to do so, equity will treat the policy as having contained such a provision upon the principle that equity treats that as done which should have been done. Of course, if the insurer is not informed of such an agreement, it is not bound thereby, but after the information is given to it, the duty rests upon the insurer to treat the proceeds of the policy as though such a provision was written into the policy. Walter Connally & Co. v. Hopkins, Tex.Civ.App., 195 S.W. 656; Mosley v. Stratton, Tex.Civ.App., 203 S.W. 397; Gilbert v. Mooring, Tex.Civ.App., 88 S.W. 2d 537; House v Brackins, Tex.Civ.App., 130 S.W.2d 917; Union Institution for Savings in City of Boston v. Phoenix Ins. Co., 196 Mass. 230, 81 N.E. 994, 14 L.R.A., N.S., 459, 13 Ann.Cas. 433; Butson v. Misz, 81 Or. 607, 160 P. 530.

The rule is also established by our courts that, although the requirement of the policy that proof of loss shall be furnished to the insurer places that burden upon the insured, where he fails or refuses to do so, it is both the duty and the privilege of the mortgagee to furnish such proof. Superior Lloyds of America v. Boesch Loan Co., Tex.Civ.App., 130 S.W.2d 1036. All this has the effect of putting the mortgagee in the place occupied by the insured mortgagor. In our opinion, therefore, appellee had the right to institute the suit and to recover upon the policy of insurance subject, of course, to the terms and conditions of the policy.

This brings us to the second question presented by the briefs, that is, whether or not the provision in the policy relative to making and filing a proof of loss with the appellant was waived. While the policy contains the provision that the proof of loss shall be furnished within 91 days after the fire, it does not provide that a failure to furnish such proof within the specified time shall work a forfeiture of the insurance. It is the standard Texas form of fire insurance policy. The requirement that proof of loss shall be furnished is one that can be waived by the insurance company. The rule is well established that any acts, declarations, or course of dealing by an insurer, with knowledge of facts constituting a breach of a condition in a policy of insurance, which reasonably lead the insured or person entitled to the proceeds of the policy to believe compliance with the condition will not be necessary or insisted upon, constitutes a waiver of the condition, and estops the insurer from insisting upon it or taking advantage of it. Mutual Reserve Fund Life Ass'n v. Tolbert, Tex.Civ.App., 33 S.W. 295; Burlington Ins. Co. v. Tobey, 10 Tex.Civ.App. 425, 30 S.W. 1111; National Standard Fire Ins. Co. v. Hubbard, Tex.Civ.App., 31 S.W.2d 859.

On the same day the fire occurred, the sales manager and agent of appellee notified the local agent of appellant at Houston of the fire, and the sales manager was directed to take the matter up with the adjustment bureau which handled adjustments of such matters for appellant. He immediately notified Cole, who was a member of the bureau and in charge of such matters, and Cole instructed appellee's agent to write him a letter, giving the details of the fire, and informed the agent that appellee would be protected. Cole afterwards went to the scene of the fire and made a personal inspection of it. It is, no doubt, true that all of the parties expected Trammell to comply with the provisions of the policy and file the proof of loss; but neither appellee nor any of its agents or attorneys were ever informed by anyone representing appellant that, in the event Trammell did not file the proof of loss, appellee would be expected to do so. In February, 1948, well within the 91 days provided by the policy for the proof of loss to be

filed, appellee employed Curtis White as its attorney to handle the claim. White immediately informed Pearson, who was appellant's state agent, of the loss and appellee's claim and Pearson told White, in effect, that appellant would pay the loss but that it did not want a condition to arise in which it would have to pay twice. It was then agreed between them that White would file an application for a writ of garnishment against appellant in order to protect appellant from a double payment on the policy. The garnishment was filed on February 25, 1948, which was still within the 91 day period, and White called Pearson's attention to the matter a number of times thereafter, suggesting that appellant pay the proceeds of the policy into the registry of the court. White also informed Pearson that, inasmuch as he had theretofore represented appellant in other matters, if the garnishment should be contested by appellant, he could not further act as attorney for the appellee. The matter drifted along in this manner until in August, 1948, when Pearson finally, and for the first time, informed White that appellant would not pay the policy because no proof of loss had been filed within the 91 day period. White then withdrew from the case and other attorneys thereafter represented appellee in the litigation. Thus it will be seen that appellant had prompt notice of the fire and appointed an adjuster to negotiate an adjustment of the loss. The adjuster assured appellee, through its agent and sales manager, that appellee would be protected. Moreover, Pearson, who was appellant's state agent, suggested the garnishment proceeding and informed White, who was then representing appellee, that the policy would be paid. No one representing appellant ever told or intimated to appellee or any of its agents or representatives during the 91 day period, that Trammell had not complied with the provisions of the policy and filed a proof of loss, nor intimated or suggested that liability would be denied on account of such failure, or that it would be necessary for appellee to file a proof of loss. We think these acts and this conduct on the part of appellant's agents and representatives constituted a waiver of the provision in the policy requiring a proof of loss within a specified time. From February until August, 1948, Pearson knew appellee was expecting payment of the policy without further procedure or requirements on its part. Notwithstanding the approaches, conversations and suggestions of White, Pearson deferred the matter and made no suggestion to White that the policy would not ultimately be paid. Furthermore, in July, 1948, Trammell, the insured, accompanied a representative of another creditor to the office of the adjuster, Cole, and requested permission to file a proof of loss. The request was declined and on September 10, 1948, appellee's attorney sent to appellant a formal proof of the loss which was returned to him, and he was later informed that the loss would not be paid by appellant even if additional proofs were furnished. Since the policy did not provide for forfeiture for failure to file the proof of loss, it would be permissible under the law to file them after the specified time had expired if the insured were justified in the delay by the acts and conduct of the insurer. In our opinion appellee was justified by such acts and conduct of appellant's agents and representatives in failing to file the proof of loss until August, 1948, when Pearson informed its attorney the loss would not be paid because the proof of loss had not been filed. The proof of loss was sent to appellant by appellee's attorney on September 10, and, under the circumstances, in our opinion, it thereby complied with any duty that rested upon it to file the proof of loss.

We have carefully examined all of the assignments of error and contentions urged by appellant and, in our opinion, none of them reveals reversible error. The judgment of the court below will, therefore, be affirmed.