# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-10076

United States Court of Appeals
Fifth Circuit

**FILED**

May 15, 2018

Lyle W. Cayce
Clerk

SIERRA EQUIPMENT, INCORPORATED,

Plaintiff – Appellant,

v.

LEXINGTON INSURANCE COMPANY,

Defendant – Appellee.

Appeal from the United States District Court
for the Northern District of Texas

Before REAVLEY, ELROD, and SOUTHWICK, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

This appeal arises from a property insurance policy that Lexington Insurance Company issued to LWL Management to insure construction equipment that LWL leased from Sierra Equipment. Sierra argues that, even though it was not a party to the insurance policy, it has standing to sue Lexington for coverage pursuant to Texas's equitable lien doctrine. Because the lease agreement between LWL and Sierra did not require that LWL obtain insurance with loss payable to Sierra, we determine that the equitable lien doctrine does not apply and Sierra lacks standing to sue Lexington for coverage under Texas law. Accordingly, we AFFIRM.

No. 17-10076

I.

Sierra leased various pieces of heavy construction equipment to LWL according to an equipment lease agreement. The lease agreement required LWL to insure the leased equipment, deliver a copy of the insurance policy to Sierra, and obtain a policy in form, in terms, in amount, and with insurance carriers reasonably satisfactory to Sierra. The agreement did not require that the policy list Sierra as an additional insured or contain a loss payable clause listing Sierra.

About a year after Sierra and LWL entered into the lease agreement, LWL filed for bankruptcy. The following year, Lexington issued a domestic property insurance policy with LWL as a named insured. The policy did not include Sierra as a named insured, nor did it mention Sierra. Furthermore, though required by the lease agreement, LWL did not provide Sierra with a copy of the policy.

During LWL's bankruptcy proceedings, and after Sierra inventoried the leased equipment, Sierra claims that it discovered that much of its equipment had been damaged, lost, or destroyed. Sierra filed an application with the bankruptcy court seeking payment from LWL for this damage. According to Sierra, however, no substantial payments from LWL ever came of this claim. This led to an investigation by Sierra, Sierra's discovery of the Lexington policy, a demand by Sierra for payment from Lexington, and eventually this action, which was filed in Texas state court but removed by Lexington on the basis of diversity jurisdiction.

Sierra seeks declaratory judgment that: (1) Sierra was the rightful owner of the leased equipment; (2) LWL breached the lease agreement by failing to name Sierra as an additional insured under the policy; and (3) Sierra may assert a claim for the proceeds of the policy up to and including the extent of

2

No. 17-10076

its loss related to the leased equipment.  At the district court, Lexington filed multiple dispositive motions, including a motion to dismiss for lack of standing.

The district court granted Lexington's motion to dismiss with prejudice, stating that "only where the lessee had a duty to take out insurance for the lessor's benefit, or include the lessor as an additional insured, and the lessee failed to do so, can the lessor maintain a direct action against the insurer." Analyzing the lease agreement, the district court found that it "does not include any language creating a duty that LWL procure insurance for Sierra's benefit or with Sierra as an additional insured."  Thus, the district court held that Sierra had no standing to bring a direct action against Lexington.  The remaining motions were dismissed as moot.  Sierra timely appealed.

## II.

"This Court reviews a dismissal for lack of standing de novo." *Moore v. Bryant*, 853 F.3d 245, 248 (5th Cir. 2017).  Where the district court decides the motion to dismiss based on undisputed facts, "our review is limited to determining whether the district court's application of the law is correct and . . . whether those facts are indeed undisputed." *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).

"In this diversity action, we must apply Texas law as interpreted by Texas state courts." *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 593 (5th Cir. 2011) (quoting *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000)).  Our task is to make an *Erie* guess as to how the Texas Supreme Court would decide the question before us. *Id.*  "We consider Texas Supreme Court cases that, 'while not deciding the issue, provide guidance as to how the Texas Supreme Court would decide the question . . . .'" *Id.* at 594 (quoting *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel L.L.C.*, 620 F.3d 558, 564 (5th Cir. 2010)).  In addition to decisions of the Texas

3

No. 17-10076

Supreme Court, which are weighed more heavily, we consider decisions of the Texas intermediate appellate courts. *Id.*

### III.

In Texas:

> The rule is established . . . that [an] insurance policy is a personal contract between the insurer and the insured named in the policy and a stranger to the policy may not ordinarily maintain a suit on it. There is an exception or corollary to this general rule in such instances as those where a mortgagor or lessee is charged with the duty of procuring such a policy with loss payable to the mortgagee or lessor, as the case may be. In those instances, in pursuance of equitable principles, it is established that equity will treat the policy as having contained such a provision upon the principle that equity treats that as done which should have been done.

*Duval Cty. Ranch Co. v. Alamo Lumber Co.*, 663 S.W.2d 627, 632 (Tex. App.—Amarillo 1983, writ ref'd n.r.e) (citations omitted). This is known as the equitable lien doctrine.

In *Farmers Insurance Exchange v. Nelson*, 479 S.W.2d 717 (Tex. Civ. App.—Waco 1972, writ ref'd n.r.e.), a Texas appellate court extended the equitable lien doctrine from mortgagee-mortgagor relationships to lessor-lessee relationships. The *Farmers* court specifically held "that a breach by a lessee of a contract to insure the leased property for the benefit of his lessor will charge the benefits of any insurance taken out by the lessee on the leased property with a lien in favor of the lessor," allowing the lessor to proceed directly against the insurer. 479 S.W.2d at 721. The focus of this appeal is the meaning of the language "for the benefit of his lessor." *Id.*

Sierra argues that the nature of its agreement with LWL, including the fact that LWL was required to deliver the insurance policy to Sierra and obtain a policy in terms satisfactory to Sierra, is such that the agreement required LWL to obtain insurance for Sierra's benefit. Indeed, Sierra goes so far as to say that "the fact that the insurance benefits the lessor is self-evident." As a

result, in Sierra's view, it has standing.  Texas courts, however, have not applied the equitable lien doctrine in the broad way that Sierra suggests.  Instead, Texas courts have looked to whether the insurance policy included, or the parties agreed that it would include, a loss payable clause to the party bringing suit.

In extending the equitable lien doctrine to lessors and lessees, the *Farmers* court discussed the equitable principles set forth in *Fidelity & Guaranty Insurance Corp. v. Super-Cold Southwest Co.*, 225 S.W.2d 924 (Tex. Civ. App.—Amarillo 1949, writ ref'd n.r.e.).  *Farmers*, 479 S.W.2d at 721.  In *Super-Cold*, a Texas appellate court held that an agreement between a mortgagor and a mortgagee under which the mortgagor is charged with procuring insurance on the mortgaged property "for the benefit of the mortgagee" will encumber the proceeds of any insurance procured by the mortgagor with a lien in the mortgagee's favor.  225 S.W.2d at 927.  The *Super-Cold* court further held that:

> [i]n such cases, it is the duty of the mortgagor to have a provision inserted in the policy that the proceeds shall be payable to the mortgagee as his interest might appear but, where he fails to do so, equity will treat the policy as having contained such a provision upon the principle that equity treats that as done which should have been done.

*Id.*  Thus, the court reasoned that what "should have been done" under the agreement—and what it treated as done—was the inclusion of a loss payable clause to the mortgagee.

For the proposition that the insurer should treat the policy as having a loss payable clause where that was the agreement, the *Super-Cold* court cited an even earlier case, *Walter Connally & Co. v. Hopkins*, 195 S.W. 656 (Tex. Civ. App.—Texarkana 1917), *opinion approved*, 221 S.W. 1082 (Tex. Comm'n App.

No. 17-10076

1920).[1] In *Hopkins*, the court granted an equitable lien to a mortgagee where the contract covering the sale of certain machinery stated that the mortgagors "would keep the machinery fully insured . . . , the loss, if any, payable to [the mortgagee] as their interest appeared." 195 S.W. at 659. The equitable lien doctrine was therefore applied only where the contract stated that any loss under the policy would be payable to the mortgagee. *Id.*

Furthermore, just last year, a Texas appellate court explicitly listed as a requirement for an equitable lien that "the named insured agreed to protect the third-party's security interest by obtaining insurance with a loss-payable clause in the third party's favor." *Westview Drive Invs., LLC v. Landmark Am. Ins. Co.*, 522 S.W.3d 583, 596 & n.6 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). Indeed, Texas courts have consistently considered whether the parties agreed on the inclusion of a loss payable clause in the insurance policy in deciding whether to apply the equitable lien doctrine.[2]

---

[1] Because this opinion was approved by the Commission of Appeals, it has the "same force, weight, and effect as the opinions written by the members of the Supreme Court itself." *Nat'l Bank of Commerce v. Williams*, 84 S.W.2d 691, 692 (Tex. 1935).

[2] *See, e.g.*, *Michael E. Black Profit Sharing Plan v. Stephens*, 973 S.W.2d 451, 452–53 (Tex. App.—Amarillo 1998, reh'g overruled) (stating that the third party was a stranger to the policy unless it showed that the policy was issued after the policyholder agreed to procure insurance with a loss payable clause in its favor); *Cable Commc'ns Network, Inc. v. Aetna Cas. & Sur. Co.*, 838 S.W.2d 947, 950 (Tex. App.—Houston [14th Dist.] 1992, no writ) ("Likewise, if a lessee agrees to obtain insurance on property with loss payable to the lessor but fails to do so, equity will treat the policy as having contained the loss payable provision and entitle the mortgagee or lessor to recover under the policy."); *State Farm Fire & Cas. Co. v. Leasing Enters., Inc.*, 716 S.W.2d 553, 554 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) ("Where a mortgagor or lessee is charged with the duty of obtaining insurance on property with loss payable to the mortgagee or lessor, but the policy does not contain such a provision, equity will treat the policy as having contained the loss payable provision . . . ."); *Duval Cty.*, 663 S.W.2d at 632 ("There is an exception or corollary to this general rule in such instances as those where a mortgagor or lessee is charged with the duty of procuring such a policy with loss payable to the mortgagee or lessor, as the case may be."); *Abilene White Truck Co. v. Petrey*, 384 S.W.2d 211, 213 (Tex. Civ. App.—Fort Worth 1964, writ ref'd n.r.e.) (holding that the equitable lien doctrine applied where the mortgagor "was charged with the duty of obtaining a policy of insurance with loss payable to the [mortgagee]"); *see also Conway v.*

No. 17-10076

Here, the agreement between Sierra and LWL did not require that LWL obtain insurance with a loss payable clause to Sierra.[3]  And the Lexington policy does not contain such a clause.  Thus, pursuant to Texas case law, Sierra, who was not a party to the insurance policy, does not have standing to sue Lexington.[4]  On these grounds, the district court's judgment is AFFIRMED.

---

*Beltline Venture Partners*, 2000 WL 254296, at \*4 (Tex. App.—Dallas Mar. 8, 2000, no pet.) (unpublished) ("Where the security agreement requires the mortgagor to have a provision in the insurance policy that makes the proceeds payable to the mortgagee, equity will treat the policy as having contained such a provision."). *But see Tillerson v. Highrabedian*, 503 S.W.2d 398, 309–400 (Tex. Civ. App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.) (holding, without considering a possible agreement between the parties on a loss payable clause but where both parties testified that they considered the non-named insured to be covered by the policy, that the non-named insured was entitled to the proceeds of the policy).

[3] The closest thing Sierra could point to was certain language in the lease agreement under a section titled "Liability," which states that "[LWL] shall indemnify and save [Sierra] harmless from any and all injury to or loss of the Equipment caused by [LWL], but shall be credited with any amounts received by [Sierra] from insurance procured by [LWL]."  As Sierra admits, this language is not a requirement that LWL obtain insurance with loss payable to Sierra.  In fact, the requirement that LWL obtain insurance is addressed in a different paragraph of the agreement.

[4] It is worth noting that this holding is in contrast with the opinion of at least one district court in this circuit. *See Sentry Select Ins. Co. v. R&R Marine Inc.*, 2012 WL 252840, at \*4 (E.D. Tex. Jan. 26, 2012) (holding that the party in the position of lessor could maintain a direct action against the third-party insurer, despite the absence of an agreement to name the lessor as an additional insured or include a loss payable clause, "[b]ecause the clear intent of the . . . rental agreement was that [the lessee] obtain insurance for [the lessor's] benefit").

7