DANIELS et al. v. UNITED STATES
RUBBER CO.

No. 2689.

Court of Civil Appeals of Texas. Waco.
Dec. 19, 1946.

Rehearing Denied Feb. 13, 1947.

Norris W. Lovett and J. S. Simkins, both of Corsicana, for appellants.

Tyson, Dawson & Dawson, of Corsicana, and M. M. Crane, Jr. (deceased) and Carrington, Gowan, Habbertan, Johnson & Walker, all of Dallas, for appellee.

LESTER, Chief Justice.

This suit was brought by the United States Rubber Company against Louis Daniels to recover from him an amount alleged to be due it for tires sold to him, for which he had not paid. Mrs. M. L. Levine and Mrs. Jule Levine Daniels were guarantors on the contract between Daniels and the Rubber Company.

Appellant Daniels answered appellee's petition with a counter claim, alleging that he was entitled to certain discounts, tire adjustments, etc., for which he had not received credit. The court, without application of either party but upon its own motion, appointed an auditor to state the accounts between the parties. After several weeks the auditor filed his report, to which Daniels addressed numerous exceptions, all of which were overruled by the court and the report was admitted in evidence over the objection of Daniels. Daniels says the court committed error in admitting the report in evidence.

Rule 172 of Vernon's Texas Rules of Civil Procedure provides as follows:

"When an investigation of accounts or examination of vouchers appears necessary for the purpose of justice between the

parties to any suit, the court shall appoint an auditor or auditors to state the accounts between the parties and to make report thereof to the court as soon as possible. The auditor shall verify his report by his affidavit stating that he has carefully examined the state of the account between the parties, and that his report contains a true statement thereof, so far as the same has come within his knowledge. Said report shall be admitted in evidence, but may be contradicted by evidence from either party where exceptions to such report or of any item thereof have been filed before the trial. The court shall award reasonable compensation to such auditor to be taxed as costs of suit."

In pursuance to said rule the court appointed Frank Brock, a resident of Corsicana, Texas, who is a certified public accountant, to audit the account between the parties. This he did and filed his report. It will be noted that the foregoing rule provides that the report shall be introduced in evidence, not that it may be, but that it shall be introduced in evidence. It also provides that if either party desires to contradict said report, or any item thereof, the party desiring to do so must file objections to the same, or some item thereof, before the trial of the case. The foregoing provision of said rule simply means that before evidence can be introduced attacking such report, or any item thereof, exceptions must be filed to the same before the trial, and if said exceptions are filed the party has a right to introduce all the legal testimony he has at his command to contradict said report upon all the matters set out in his objections, but without exceptions, is not permitted to contradict said report. The sworn report of an auditor duly appointed by the court is not rendered inadmissible because objections are filed against it, but such exception only gives the party a right to introduce evidence to prove, if he can, that said report is incorrect. In admitting the report in evidence the court was only complying with the clear mandate of the rule, just as it was when Daniels was afforded the right to introduce all the evidence he had against it after he had filed his exceptions. The auditor was placed upon the witness stand and testified fully.

Daniels examined him in detail concerning the manner in which the audit was made. Daniels himself testified at length concerning his transactions with the Rubber Company. After all the evidence was introduced the court, in a very fair and impartial manner, submitted the controlling issues to the jury, to which appellant Daniels did not file any exceptions. The controlling issues found against him are as follows:

"Special Issue No. 1: Do you find from a preponderance of the evidence in this case that the defendant, Louis 'Tires' Daniels, is entitled to volume discounts, provided for in written contracts between the parties, for which he has not received credit from the plaintiff? Answer 'yes' or 'no'." To which the jury answered "No".

"Special Issue No. 2: Do you find from a preponderance of the evidence in this case that the defendant, Louis 'Tires' Daniels, is entitled to quantity discounts, provided for in written contracts between the parties, and for which he has not received credit from the plaintiff?" To which the jury answered "No."

Appellant cites the case of Bush v. Davis, Tex.Civ.App., 147 S.W.2d 888, in support of his theory that the report was not admissible in the face of his objections. We do not consider that case in point with the facts here. In the case cited the auditor was appointed by one of the parties to the suit, thereby becoming the agent of said party appointing him. He did not have the sanction of the court, nor was he clothed with the power and authority that an auditor appointed by the court would possess. In the cited case there is no doubt but what the auditor tried to serve the best interests of the plaintiff, who employed him. He, in addressing the plaintiff's attorney concerning said audit, used the following remarks:

"Your auditor takes this occasion to express his appreciation of the courtesies received at the hands of the various employees of the Texas Automatic Sprinkler Company. He has viewed the situation, however, from the standpoint of Mrs. Davis and her interests, and trust that this report, its conclusions and recommendations, may aid her in arriving at a proper and equitable adjustment with the Company."

We therefore overrule appellant's contention. Tracy et al. v. Willacy County, Tex.Civ.App., 169 S.W.2d 217; Smith et al. v. Hill, Tex.Civ.App., 12 S.W.2d 233; Cook v. Peacock, Tex.Civ.App., 154 S.W.2d 688.

Appellants' next proposition is: "The trial court erred in permitting the witness H. B. Pixley to testify to certain purported entries in the books or records of the appellee, because the appellee wholly failed and did not attempt to comply with the Shop Book Rule as announced by the appellate courts of this state, and said testimony of said witness Pixley clearly showed that he had no familiarity or knowledge of said books or the manner in which they were kept, and was permitted to testify to the correctness of said records, merely basing his testimony upon the theory that there was a general system existing over the country in reference to the keeping of the books of the appellee." The evidence shows that Pixley was not in Dallas during 1940 and 1941 and not until 1945, when he was made operating manager. He was placed upon the witness stand and permitted to testify, over the objection of appellants, concerning the appellee's method of crediting discounts to dealers on the sale of tires and the system of bookkeeping that the company used. The witness testified that he had been with the company eleven years; during that time he had held various positions from cleaning tires up to the order desk, stock control desk, office manager, and to the job of office shop manager, and that he was familar with the system of records that the company keeps and the bookkeeping methods that they follow throughout the United States; that he had occasion since he came to Dallas to examine the records of the United States Rubber Company in so far as they relate to the account of the appellant. He further testified:

"Q. You don't know whether they are accurate or not, do you? A. From the actual billings, they are in agreement with the dealer.

"Q. I know. But do you personally know that these books are accurate? A. Well, everything I have checked has worked out."

He was again asked on cross-examination:

"Q. You don't know whether they are accurate or not, do you? A. They have been. We have test checked to be certain.

"Q. I am talking about these records. A. Yes sir. I have personally test checked them.

"Q. And do you know they are accurate? A. Yes sir. The ones I have checked.

"Q. And you are now the custodian of them in your capacity as managing operator? A. Yes, sir.

"Q. Those records you refer to, I want you to state whether or not they are the original records, the permanent records of the corporation. A. Yes sir, they are torn right from the books; you can see the marks where they are torn out."

The auditor, Frank Brock, who is an experienced bookkeeper and accountant, testified to the following:

"Q. Did you or not find supporting vouchers for all charges that appeared on the account? A. I found them just as stated.

"Q. State whether or not you found that to be correct—that balance. A. That balance is correct as stated in here, as I stated that I found supporting evidence."

The witness M. L. Block, who is the district credit manager for the appellee, testified:

"Q. I believe you say, Mr. Block, that the consigned stock at the time that letter was written had not then been returned altogether to Dallas? A. The last consignment, I have it in my records, I think was May 30, 1941, the last shipment came in. Can I find that?

"Q. Yes. A. May 31, 1941, is the date it went on the books, and the day before is approximately when the merchandise came in the house; it wouldn't be over a day or two."

We think Pixley's testimony, taken in connection with witnesses Brock and Block, is sufficient to show that the records were prima facie accurate. In cases where the records are very voluminous, it would be

impossible, or at least an awful burden, to put on every witness who made an original entry in various transactions. In many instances the party who made them has severed his connection with the concern and his whereabouts are unknown, as in this case, the party who made the entries being no longer with the company and his address at the time of the trial being unknown. In the case of Heid Bros. v. Commercial National Bank, Tex.Com.App., 240 S.W. 908, 24 A.L.R. 904, the president of the bank was in charge of the bank when the entries were made, though it was not shown that the president personally saw each and every entry made in the books of the bank. In the case of Smith Detective Agency, Inc., v. Security Nat. Bank, Tex.Civ.App., 260 S.W. 273, a bank was allowed to introduce its books in evidence through the testimony of the head bookkeeper, even though it was affirmatively shown that the head bookkeeper was not present at the time the entries were made, and even though it was affirmatively shown that the bookkeeper himself had made none of the entries. See also: Smith. et al. v. Hill, Tex.Civ.App., 12 S.W. 2d 233. Wigmore on Evidence, Sec.. 1530, holds:

"The conclusion is, then, that where an entry is made by one person in the regular course of business, recording an oral or written report made to him by other persons in the regular course of a transaction lying in the personal knowledge of the latter person, there is no objection to receiving that entry under the present exception, verified by the testimony of the former person only, or of a superior who testifies to the regular course of business, provided the practical inconvenience of producing on the stand the numerous other persons thus concerned would in the particular case, outweigh the probable utility of doing so."

In McCormick and Ray, Texas Law of Evidence, Sec. 561, page 716, it is stated:

"The rigid requirements of the common law would seem more appropriate if the records were not fully open to attack after their admission. Business men who settle daily all their affairs on the base of business records may well be surprised at the difficulties which they encounter in the Court House, even to secure the admission of these same records for consideration at all. It would seem that the time has come to make a third logical extension of the rule, and to require for the admission of an entry or record merely the evidence of any competent person that the entry was made in the regular course of business, and as a part of the records of some establishment. Non-production of the person who made it, or any other circumstances, should be matters affecting the weight and not the admissibility of the entry."

■ If it was error for the court to admit Pixley's testimony, it was a harmless one, since the auditor in making his audit used the books in making it and his audit was based at least in. part upon the information he secured from the records of the Rubber Company and said audit was before the jury, so we believe that if it was error at all, it was not of such magnitude as to cause a reversal of this case.

■ Appellant's fifth point is: "The court erred in permitting the witness M. L. Block to testify as to conversations had between him and Louis Daniels, with reference to settling of the accounts between them, such testimony being clearly in contravention of the rule against the admission of statements made in an effort to compromise matters." Appellant Daniels has failed to refer us to, and we have been unable to find, any evidence even suggesting an offer of compromise. As we understand, an offer of compromise is where one or both parties, in order to settle their differences, concedes some right that he believes he is entitled to, such as an offer to reduce his claim and take less than he thinks is due him in order to bring about a mutual settlement. In this case appellee and appellant at all times demanded from the other the full amount that they contended was due and at no time did either offer to make any concession to the other in reducing their respective claims.

We therefore affirm the judgment of the trial court.