**Ed TILLERSON et al., Appellants,**

v.

**Andrew HIGHRABEDIAN, Appellee.**

No. 855.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Dec. 5, 1973.

Rehearing Denied Jan. 2, 1974.

Monroe Northrop, Austin, Dabney, Northrop & Garwood, Houston, for appellants.

A. J. Watkins, John C. Marshall, III, Watkins & Hamilton, Houston, for appellee.

TUNKS, Chief Justice.

On June 28, 1967, Mr. Ed Tillerson and his wife, as owners, entered into a contract with Mr. Andrew Highrabedian, as builder, for the construction of a residence in Katy, Texas. On February 10, 1968, when the house was almost completed it burned. At the time the house burned there was in effect a builder's risk insurance policy covering it and issued by Commercial Union Insurance Company of New York. In that policy Tillerson was the named insured. As a result of the fire the insurer paid Tillerson about $49,000 pursuant to the policy. Then, as subrogee of the Tillersons, the insurer filed suit in their names against Highrabedian to recover for loss of the house. Highrabedian, after answering in the suit so filed against him, filed a third party action against the insurance company asking that the builder's risk policy issued by it be reformed so as to name him as an insured thereunder. A jury trial resulted in a judgment that the nominal plaintiffs, the Tillersons, take nothing by their suit, and that the insurance policy be reformed so as to name Highrabedian as an insured. The insurance company, as subrogee of the Tillersons, has perfected appeal in their names and as third party defendant has perfected appeal in its own name.

The written contract executed by the owner and builder was prepared by and executed in the office of the attorney who represented the bank which furnished the construction financing. It included a provision that the builder should procure a builder's risk insurance policy protecting the interests of the owner, the builder, and the bank during the period of construction. The American Institute of Architects' general conditions for building contracts were made part of the contract by reference. That document included a provision that unless otherwise provided, the owner should procure the builder's risk insurance for the protection of the interests of all parties.

After the execution of the written contract and while they were still in the lawyer's office, Tillerson and Highrabedian orally discussed the matter of getting the builder's risk insurance. They orally agreed that Tillerson, and not Highrabedian, should be the one to arrange for that insurance. Pursuant to that oral agreement Tillerson procured a policy through the agency of Ward Stanberry, a business neighbor and friend of Tillerson. Tillerson and Stanberry did not discuss the matter of naming the insured or insureds in the policy. Stanberry caused Tillerson alone to be named the insured. Stanberry delivered the issued policy to the bank. Tillerson was billed for and paid the premium. The original policy was placed with a company other than this insurer-appellant. When the original policy expired in January of 1968 the agent procured a new policy from this insurer-appellant. Tillerson again was named as the only insured and again was billed for the premium. The limit of the policy was $40,000. By February 7, 1968, it became apparent that the house was going to cost more than that. At the request of Highrabedian the limit of the policy was increased by the agent to $52,000 on that date.

The construction contract was basically a cost plus 10% contract. Provision was made for periodic payments by the owners as the work progressed. As payments were made by the owners they acquired an insurable interest in the building. Work that had been done and for which payment had not been made represented an insurable interest of the contractor. The contractor also had an insurable interest in that he was obliged to turn over to the owners a house completed in accordance with the terms of the contract. The

bank, as mortgagee, had an insurable interest. It was for this reason that provision was made in the main contract that Highrabedian should get insurance to protect the interests of all three interested parties, and, alternatively, in the AIA general conditions, that Tillerson should arrange for such insurance.

■ The jury's answer to a special issue found that after the execution of the written contract, Tillerson and Highrabedian agreed that Tillerson would arrange for builder's risk insurance that would protect Tillerson, Highrabedian, and the bank. That finding was fully supported, if not compelled, by the evidence. Tillerson and Highrabedian both testified that such was the substance of their informal oral agreement. Tillerson testified that in arranging for the insurance he felt that he was "fulfilling an agreement with and a commitment made to Andrew Highrabedian." Both of those parties and Stanberry testified that they considered Highrabedian to be covered by the policy issued.

After the fire the insurer-appellant paid Tillerson approximately $49,000. The amount paid represented the cost of that which had been done in the construction of the house at the time of the fire. The figure apparently included some labor and materials for which the contractor had not been paid. The insurance company thus furnished Tillerson with money with which to pay Highrabedian for an interest which he, Highrabedian, had in the burned building.

■ Tillerson was paid in full for his loss. The money so paid was used by him to pay Highrabedian to rebuild the house. The appellants' attorney contends that under the collateral source rule Highrabedian should not escape liability because of the fact that Tillerson's loss has been paid under the insurance policy of which Tillerson was the named insured. That rule is not applicable because of Tillerson's agreement to arrange for insurance that would protect Highrabedian. When one of two parties, each of whom has an insurable interest in a particular property, agrees to get insurance for the protection of both interests, but does, in fact, procure a policy naming only himself as insured, and the property is damaged or destroyed, the other party, as between the two, is entitled to the proceeds of the policy up to the extent of his loss. Farmers Insurance Exchange v. Nelson, 479 S.W.2d 717 (Tex.Civ.App.-Waco 1972, writ ref'd n. r. e.); 5A John A. Appleman & Jean Appleman, Insurance Law and Practice, sec. 3365 (1970).

■ The building contract, as noted, was basically a cost plus contract. However, no specific provision was made as to which of the parties was to pay the premium on the builder's risk insurance policy. The appellant-insurer argues that under the contract Highrabedian was obliged to pay the cost of the policy and that the oral agreement whereby it was agreed that Tillerson should get the insurance was without consideration and was therefore ineffective as an amendment. In the first place, the question of liability under the written contract for the cost of the insurance was at least debatable. Both Tillerson and Highrabedian testified that they construed the written contract as providing that Highrabedian was to get the insurance and then bill Tillerson for its cost plus 10%. Tillerson said that he had saved the 10% additional cost by getting the policy himself, but that this was not his principal motive in making the oral amendment to the contract. He was desirous that as much as possible of that spent on the construction be spent locally in Katy. He agreed to get the insurance so that he could give the business to Stanberry, a local man. He wanted to establish good will among his business associates in Katy. The oral agreement was sufficiently supported by consideration as to be a binding amendment to the written contract.

The appellee offers several other arguments in support of his position, including

arguments that he was an insured under the policy regardless of the oral agreement and that the trial court's judgment reforming the policy so as to name him as an insured was valid. In view of the holdings set out above, the questions raised by those contentions need not be answered.

The appellants' points of error are overruled.

The judgment of the trial court is affirmed.