JIM WALTER HOMES, INC.,
Appellants,

v.

Ervin and Gladys FOSTER, Appellee.

No. 5364.

Court of Civil Appeals of Texas,
Eastland.

Dec. 13, 1979.

Charles C. Murray, Atlas, Hall, Schwarz, Mills, Gurwitz & Bland, McAllen, for appellants.

Fred Brown, Garland, for appellee.

McCLOUD, Chief Justice.

Plaintiffs, Ervin and Gladys Foster, sued defendant, Jim Walter Homes, Inc., under the Deceptive Trade Practices—Consumer Protection Act, alleging that defendant breached an implied warranty to construct plaintiffs' house in a good and workmanlike manner. Following a nonjury trial, the court found that plaintiffs suffered $9,000 actual damages from defendant's breach of warranty. The actual damages were trebled pursuant to Section 17.50 of the Act, and plaintiffs were awarded attorney's fees. Defendant appeals. We affirm.

Plaintiffs paid defendant an extra charge to have a pier and beam foundation con-

structed for the house. It is undisputed that the foundation, as constructed, was defective. Defendant does not contest the finding of $9,000 actual damages. It attacks, however, the trebling of the actual damages, because it says it was, "not given a reasonable opportunity to cure the defects before suit was filed."

Section 17.50 of the Deceptive Trade Practices Act provides in part:

(a) A consumer may maintain an action if he has been adversely affected by any of the following: . . . (2) breach of an express or implied warranty . . . .

Section 17.50A of the Act provides:

In an action brought under Section 17.-50 of this subchapter, actual damages only and attorney's fees reasonable in relation to the amount of work expended and court costs may be awarded where the defendant:

\* \* \* \* \* \*

(2) proves that he had no written notice of the consumer's complaint before suit was filed, or that within 30 days after he was given written notice he tendered to the consumer (a) the cash value of the consideration received from the consumer or the cash value of the benefit promised, whichever is greater, and (b) the expenses, including attorney's fees, if any, reasonably incurred by the consumer in asserting his claim against the defendant; or

(3) in the case of a suit under Section 17.50(a)(2) the defendant proves that he was not given a reasonable opportunity to cure the defects or malfunctions before suit was filed.

The trial court found that the defendant was given a reasonable opportunity to cure the defects before suit was filed, and that defendant failed to cure such defects. Jim Walter Homes attacks this finding and argues it established as a matter of law that it was not given a reasonable opportunity to cure the defects before suit was filed, and alternatively, that such finding by the court is against the great weight and preponderance of the evidence.

The court found that defendant knowingly constructed the house without putting proper piers under the perimeter beam. This finding is not attacked. The court also found:

That prior to March 1, 1977, the Plaintiffs notified the Defendant that the sheetrock on walls and ceilings was cracking, that doors were out of plumb and would not open or close, that the floor was unlevel and settling, that the plumbing fixtures were pulling away from the walls, that the cabinets were pulling away from the walls, and that the ceiling was bowing and that the paint was falling off of the facia board of the house.

Defendant does not question this finding of fact. The court further found the defendant not only failed to correct these defects, but it knew the defects were not corrected, and it falsely represented to the plaintiffs that the repairs had been made. There is evidence to support these findings. *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263 (Tex.1974). Mrs. Foster again pointed out these defects to defendants' general manager and construction superintendent in May 1977. Mrs. Foster testified that she could, at that time, put her hand between the cabinet and the floor. Mrs. Foster complained that the floor was uneven and asked defendant's construction superintendent to "put a level on it." He answered that he did not "have time to run around with a level."

Defendant argues that it had no notice of the "foundation" problem until it received a letter dated February 8, 1978, from plaintiffs' attorney. Defendant contends that after receipt of the letter, its representative on March 14, 1978, inspected the house, discovered the foundation defect, and offered at that time to cure the defect. Plaintiffs' original petition was filed on March 31, 1978. We disagree with defendant's argument that it had no notice of the foundation problem until receipt of the attorney's letter. The court could have reasonably concluded from the testimony of defendant's expert witness, that defendant,

as well as any reasonably prudent builder, would have known, from the visible defects, that the house had a foundation problem. Plaintiffs were not required to notify defendant as to the exact cause of the visible defects. They properly notified defendant of visible defects that normally appear when a foundation is defective. We hold that the plaintiffs sufficiently specified the defect.

The defendant was properly notified in March and again in May of 1977 that the house was defective. The defects were never corrected. Defendant failed to prove as a matter of law that it was not given a reasonable opportunity to cure the defects before suit was filed. After reviewing the entire record, we hold the court's finding is not against the great weight and preponderance of the evidence. *In re King's Estate*, 150 Tex. 662, 224 S.W.2d 660 (1951).

■ Defendant next argues the court erred in not permitting it to cross-examine plaintiffs' attorney regarding his financial interest in the case. Defendant urges that such evidence became admissible to show bias and motive when the attorney became a witness in the case. Plaintiffs' attorney testified as to certain conversations he had with defendant's representative on March 14 and 16, 1978, following the attorney's letter to defendant on February 8, 1978. The attorney and defendant's representative disagreed as to whether the representative on March 14 and 16, 1978, offered to properly repair the foundation. Defendant attempted to require plaintiffs' attorney to produce his employment contract. The court sustained plaintiffs' objection that the fee arrangement was "privileged." The general rule appears to be that the fee arrangement is not privileged. The rule is stated in 97 C.J.S. Witnesses § 283(f) as follows:

> The rule as to privileged communications does not exclude evidence as to the contract between the attorney and client as to the fee to be paid for professional services, or the mode or terms of payment of such fee, unless such testimony would tend to implicate the client in the com-

mission of a crime, or to show an admission on his part subjecting him to a civil liability. It is not something which was acquired from the client or during the existence or by reason of the relationship of attorney and client, but it is a matter collateral to the professional relation, not strictly a part of it, one which has no bearing on the merits of the matters on which professional aid was invoked, and which was necessarily fixed in some amount or other before the relation of attorney and client existed.

See also 81 Am.Jur.2d, Witnesses, § 215; *Ex Parte Martin*, 141 Ohio St. 87, 47 N.E.2d 388 (1943); *Baskerville v. Baskerville*, 246 Minn. 496, 75 N.W.2d 762 (1956); *Strickland v. Capital City Mills*, 76 S.C. 16, 54 S.E. 220 (1906).

■ Although the fee arrangement is not privileged, it will rarely be relevant evidence. In the instant case, however, since the attorney testified as a witness to events other than formal matters, the evidence was admissible to show bias and motive. We hold, however, the defendant has failed to show that the error was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. Tex.R.Civ.P. 434. Defendant argues that the employment contract might show the attorney's "motive" in rejecting defendant's offer to cure. Defendant urges that the contract was admissible to show that the attorney's motive was to seek treble damages, because of his financial interest, rather than accept defendant's offer. This was a nonjury case. It was obvious that the plaintiffs' attorney had a financial interest in the case. Plaintiffs sought and were awarded attorney's fees. The trial court was aware that plaintiffs sought treble damages. We point out that defendant does not contend that it complied with paragraph (2) of Section 17.50A. It attempts to prevent treble damages only under paragraph (3). It is obvious from the trial court's findings of fact that it found that defendant had a reasonable opportunity to cure the defects, including the foundation problem, in March 1977. Even if we

assume that defendant did in fact offer to properly "cure the defects" shortly before suit was filed, this would not be controlling. The evidence supports the court's implied finding that defendant had been given a reasonable opportunity to cure the defects long before it allegedly offered to repair the foundation in March 1978. The error in refusing to permit defendant to cross-examine the attorney regarding the fee arrangement was harmless. Rule 434, supra.

We also hold the court did not abuse its discretion in permitting plaintiffs to reopen and offer additional evidence as to reasonable and necessary attorney's fees in the event of an appeal. Tex.R.Civ.P. 270. We further hold that there is some evidence to support the award of attorney's fees, and the award is not against the great weight and preponderance of the evidence. *In re King's Estate*, supra.

Defendant urges that the court erred in rendering judgment, "if it did," based on findings that defendant made certain false representations to plaintiff regarding repairs because the court also found that plaintiffs did not rely upon the representation. Plaintiffs concede that, in the absence of reliance, the representations did not constitute a deceptive trade practice. Plaintiffs agree that the judgment is based upon a breach of warranty and not upon the questioned representations.

We have considered all points of error. All are overruled. Judgment of the trial court is affirmed.