DUVAL COUNTY RANCH
COMPANY, Appellant,

v.

ALAMO LUMBER COMPANY, Appellee.

No. 07–83–0135–CV.

Court of Appeals of Texas,
Amarillo.

Dec. 21, 1983.
Rehearing Denied Jan. 11, 1984.

See also, 597 S.W.2d 528.

Law offices of Maloney & Maloney (Pat Maloney and Marynell Maloney), San Antonio, for appellant.

Thomas H. Veitch, San Antonio, Dean & Hunt (Homer E. Dean, Jr.), Alice, George Spencer, San Antonio, for appellee.

Before DODSON, COUNTISS and BOYD, JJ.

BOYD, Justice.

This suit arises out of a fire which occurred on the night of February 4, 1979. The fire totally destroyed a ranch house built by the Alamo Lumber Company (herein Alamo) and located upon property belonging to Duval County Ranch Company (herein Duval). At the time of the fire Alamo had obtained fire insurance policies covering the house with St. Paul Insurance Company and Federal Insurance Company (herein Intervenors). As a result of the fire, Intervenors paid Alamo $330,610.20.

Prior to the fire, a dispute arose between Alamo and Duval as to the amount owed by Duval for the construction of the house. As a result of that dispute, litigation arose between the parties which, on August 2, 1978, resulted in a judgment in favor of Alamo in the amount of some $443,418.05. The judgment also provided for foreclosure of a mechanic's lien upon the tract of land upon which the dwelling was located. Appeal from that part of the judgment relating to prejudgment interest and attorney's fees was taken by Duval, resulting in an affirmance of the trial court judgment on March 27, 1980. *See Duval County Ranch Co. v. Alamo Lumber Co.,* 597 S.W.2d 528 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.).

In the instant suit, Duval asserts, inter alia, it is entitled to a credit on Alamo's judgment against it equal to the amount paid by Intervenors to Alamo by virtue of an asserted agreement by Alamo to carry insurance for it. In the alternative, Duval pleads it is entitled to the credit sought on

equitable principles. Intervenors assert subrogation rights in Alamo's judgment against Duval to the extent of the amount paid by them to Alamo.

Trial was to a jury and issues were submitted to them concerning promissory estoppel. The jury returned a verdict finding that there was no agreement between Duval and Alamo as to the insurance policies and proceeds in question. On the strength of those answers, the trial court rendered judgment against Duval on its claim and also found that intervenors were subrogated to Alamo's judgment against Duval in an amount of $165,305.14 each. Hence, this appeal. In the appeal Duval asserts it was entitled to a credit of the insurance proceeds as a matter of law. It also claims reversible evidentiary errors were committed as more fully set out below. Alamo maintains the court erred in decreeing the subrogation rights to intervenors. For reasons hereinafter expressed, we affirm the judgment of the trial court.

Duval attacks the judgment in seven points of asserted error alleging (1) the evidence establishes as a matter of law that it is entitled to a credit of the insurance proceeds; (2) Intervenors are not entitled to equitable subrogation; (3) the trial court erred in admitting a telegram from Duval's former attorney to Alamo's attorney as it was not authorized and therefore hearsay; (4) the telegram was sent during settlement and compromise negotiations and was therefore inadmissible; (5) deposition testimony of Duval's former attorney should not have been admitted since it contained conversations which were privileged communications; (6) testimony concerning a "secret agreement" between Alamo and Intervenors should have been admitted; and (7) the jury's finding that no agreement existed was so against the great weight and preponderance of the evidence as to be manifestly unfair.

In argument under its first point of error, Duval asserts a paucity of Texas case law argues secondary authority, and asserts the existence of strong public-policy reasons for not permitting Alamo to receive, what it characterizes as, a double recovery. Duval reasons that if it is not given its credit, Alamo will have received over a million dollars on a contract which was worth only $670,000.00 (by virtue of receipt of money received before the dispute arose which resulted in Alamo's initial judgment, receipt of the insurance proceeds, receipt of the money tendered into the registry of the court and the amount still due on the judgment in question). Duval contends the effect of this would leave it with a house burned to the ground and a substantial debt owed to Alamo, while Alamo obtains a windfall double recovery.

This double recovery, Duval reasons, is analogous to unjust enrichment and the case law concerning unjust enrichment is applicable. Duval cites case law characterizing unjust enrichment as "the result of failure to make restitution of benefits received under such circumstances as to give rise to an implied or quasi-contract to repay" and "a right of recovery under unjust enrichment is essentially equitable and does not depend upon the existence of a wrong." See *Fun Time Centers, Inc. v. Continental National Bank,* 517 S.W.2d 877, 884 (Tex. Civ.App.—Tyler 1974, writ ref'd n.r.e.). Duval asserts there existed a quasi-legal relationship between the parties and Alamo has received a benefit, the retention of which would be unconscionable. Therefore, Duval says, to allow its recovery of the credit sought by Duval from Alamo would result in an equitable solution to an otherwise unfair result. We do not agree.

For the purpose of discussion of this point, Duval assumed, arguendo, that no agreement existed between the parties as to the acquisition of the policies in question, an assumption which we accept in discussion of the point. The record also establishes that Duval had obtained its own insurance from Aetna Life & Casualty Co. (herein Aetna) on the dwelling in question in the amount of $350,000.00 and received the proceeds of this coverage. It further establishes that the premiums due on the policies obtained by Alamo were paid by Alamo and were not charged to Duval.

■ In our discussion we note initially that, as a lienholder, Alamo did possess an insurable interest in the house which burned. *Camden Fire Ins. Ass'n v. Brown,* 109 S.W.2d 280, 282 (Tex.Civ.App.—Fort Worth 1937, writ dism'd); *Tillerson v. Highrabedian,* 503 S.W.2d 398, 399 (Tex.Civ. App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.). Indeed, Duval stipulated that Alamo had such an insurable interest.

■ The rule is established in this state that a fire insurance policy is a personal contract between the insurer and the insured named in the policy and a stranger to the policy may not ordinarily maintain a suit on it. *Travelers Fire Ins. Co. v. Steinmann,* 276 S.W.2d 849, 851 (Tex.Civ.App.—Dallas 1955, writ ref'd n.r.e.); *Farmers Insurance Exchange v. Nelson,* 479 S.W.2d 717 (Tex.Civ.App.—Waco 1972, writ ref'd n.r.e.); *Doss v. Roberts,* 487 S.W.2d 839 (Tex.Civ.App.—Texarkana 1972, writ ref'd n.r.e.). There is an exception or corollary to this general rule in such instances as those where a mortgagor or lessee is charged with the duty of procuring such a policy with loss payable to the mortgagee or lessor, as the case may be. In those instances, in pursuance of equitable principles, it is established that equity will treat the policy as having contained such a provision upon the principle that equity treats that as done which should have been done. *See Fidelity & Guar. Ins. Corp. v. Super-Cold Southwest Co.* 225 S.W.2d 924, 927 (Tex.Civ.App.—Amarillo 1949, writ ref'd n.r.e.). However, application of this corollary requires a pre-existing duty, a prerequisite which does not exist in this case.

■ In support of its position that equity and logic both support the position of permitting a third-party obligor, such as Duval, a credit of proceeds upon its debt, Duval eloquently cites the article by Cecil G. King, contained in 30 Texas L.Rev. 622. While Professor King does advocate the disposition sought by Duval, he recognizes that the disposition generally made by the courts has generally been that made here, *i.e.* payment of the proceeds to the named insured, with the granting of the right to

the insurer to be subrogated to the contractual obligation. He strenuously urges the abolition of the old concept of the insurance contract as a purely personal one and the substitution of a rule that in every case where the owner of a security interest insures the property, the debtor should be given the benefit of the insurance. However, the author recognizes that the present rule is "so firmly entrenched as to preclude the possibility of the adoption of the suggested rule by judicial decision." We agree with his conclusion and note that his suggestion of statutory reform has not been adopted in Texas.

Duval also argues that public policy reasons mandate that it prevail. It argues that if, lien holders such as Alamo were allowed to recover both the insurance proceeds and the indebtedness that double recovery would constitute "a strong incentive for arson and other dishonorable and destructive conduct would exist." In support of that position, Duval quotes the statement of the court in *Camden Fire Insurance Association v. Sutherland,* 284 S.W. 927 (Tex. Com.App.1926, holding approved), that:

It has never been the policy of the court to permit anyone to profit by a fire . . . . Sound public policy demands that destruction of property by fire be discouraged in every legitimate way.

■ Consideration of this argument mandates that we note that, if Duval's position is accepted, since it has received the proceeds of its policies payable to it because of the destruction of the house, to allow it the credit sought would be to allow it a double recovery, a result arguably subject to the same insidious consequences pointed out above. The judgment of the trial court, by granting subrogation rights to intervenors appears to give the equitable result of preventing a double recovery by any party. While Duval argues that disposition is made inequitable because of an agreement between Alamo and Intervenors to "split the proceeds", we do not think the record supports this conclusion. In *Quincy Mutual Fire Ins. Co. v. Jones,* 486 S.W.2d 126, 130 (Tex.Civ.App.1972, no writ), the court held,

in a situation somewhat analogous, that a mortgagor, not being privy to a fire insurance policy, was not entitled to receive credit upon his indebtedness or to be relieved of the security obligation to the extent of a payment under the policy. This holding is persuasive under the question here presented and supports our conclusion that the evidence does not establish Duval's right to the insurance proceeds as a matter of law. We overrule point of error number one.

We think logical continuity next requires discussion of points of error three and four. In point three, appellant argues that the receipt into evidence of a telegram sent by Duval's then attorney to the attorney for Alamo constituted reversible error because Duval's attorney was not authorized to send the telegram; hence it was hearsay as to Duval. In point four, Duval asserts the telegram was sent during settlement negotiations. Therefore, it reasons, the telegram was privileged and inadmissible. Appellant briefs and argues these points together and we will likewise do so.

■ It is axiomatic that the relationship of attorney and client is one of principal and agent, *Texas Employers Ins. Ass'n v. Wermske,* 162 Tex. 540, 349 S.W.2d 90 (1961). An attorney is a special agent and his powers and authority are confined to, but do include, those powers necessary to the proper fulfillment of the duties cast upon him by such employment. *Hotel Longview, Inc. v. H.A. Pittman,* 276 S.W.2d 915 (Tex.Civ.App.1955, writ ref'd n.r.e.). An agent's hearsay statements should be received against the principal as vicarious admissions only when the trial judge finds, as a preliminary fact, that the statements were authorized. *Big Mack Trucking Company, Inc. v. Dickerson,* 497 S.W.2d 283, 287 (Tex.1973). Our initial inquiry will therefore be directed as to whether the trial judge was justified in his evident preliminary determination that the statements contained in the telegram were authorized.

■ Decision of this question requires a two-fold determination; first, at the time the telegram was sent on March 7, 1979, did an attorney client relationship exist between the attorney and Duval and, if so, were the statements made in the telegram within the purview of that relationship. The relationship of attorney and client may be implied from the conduct of the parties. *E.F. Hutton & Company v. Brown,* 305 F.Supp. 371 (1969). Morris Ashby, executive vice-president of Duval during the time in question testified that Mills Latham, who sent the telegram, was one of Duval's attorneys throughout the initial lawsuit between Alamo and Duval until the trial court judgment and was an attorney for Duval both before and after March 7, 1979. He also testified that Latham was the attorney who handled the appeal of that case which was terminated on March 27, 1980. Although he testified that he had not authorized Latham to send any telegrams and did not remember paying any bill for the sending of the telegrams, during the time frame in question, Duval had paid several bills from Latham. We think the testimony would amply justify the trial court in believing Latham was representing Duval on March 7, 1979.

■ Once there is evidence sufficient to show the fact of agency or employment prima facie, declarations or statements of the alleged agent are admissible in corroboration. *McAfee v. Travis Gas Corporation,* 137 Tex. 314, 153 S.W.2d 442, 448 (1941). Latham testified that he did "some work" in the collection of the proceeds from the Aetna policy. He testified that the telegram, which disclaimed any knowledge of or privity to the policy issued by intervenor St. Paul Marine Insurance Co. was sent to "give Aetna an excuse to go ahead and pay the money." We think the evidence was sufficient to warrant a finding that the sending of the telegram was justified.

■ Duval also asserts the telegram was inadmissible because it was sent in furtherance of settlement negotiations. It is well settled that an offer to compromise or settle an existing controversy is inadmissible. The determination of what constitutes an offer of compromise within the general rule is sometimes a matter of diffi-

culty. An offer of compromise has been defined as "where one or both parties, in order to settle their differences, concedes some right that he believes he is entitled to such as an offer to reduce his claim and take less than he thinks is due him in order to bring about a mutual settlement." *Daniels v. United States Rubber Co.,* 199 S.W.2d 533, 536 (Tex.Civ.App.—Waco 1946, writ ref'd n.r.e.). The telegram in question, when analyzed, does not offer to reduce an entitled claim but simply states that because of a lack of privity on the part of Duval to intervenor's policy, intervenors could have no claim against the Aetna policy of Duval and, if payment of the Aetna funds was further withheld, Duval would file suit against Alamo and St. Paul for tortious business interference. It is within the discretion of the trial court to determine whether or not a communication amounts to a compromise offer and the appellate court is not authorized to overrule an exercise of that discretion if the trial court's action is supported by evidence. *Allen v. Avery,* 537 S.W.2d 789, 791 (Tex.Civ. App.—Texarkana 1976, no writ). The trial court could well have considered the telegram as being in the nature of an ultimatum rather than an overture for peaceful settlement. *See Ginsberg v. Selbest Dress,* 238 S.W.2d 621, 623 (Tex.Civ.App.—Dallas 1951, writ ref'd n.r.e.). We find no abuse of the trial court's discretion. Points of error three and four are overruled.

In point five, Duval urges error by the trial court in admitting deposition testimony of its then attorney, Mills Latham, since such testimony concerned matters privileged under the attorney-client relationship. We do not agree.

 Duval correctly asserts that this is the oldest of the privileges for confidential communication still existing in Texas. However, not all statements made by a client to an attorney are privileged. *Hayes v. Pennock,* 192 S.W.2d 169 (Tex.Civ.App.—Beaumont 1946, writ ref'd n.r.e.). Before a communication to an attorney is protected, it must appear that the communication was made by a client seeking legal advice from a lawyer in his capacity as such and the communication must relate to the purpose for which the advice is sought, and the proof, express or by circumstances, must indicate a desire in the client for confidence and secrecy. *Ballard v. Ballard,* 296 S.W.2d 811, 816 (Tex.Civ.App.—Galveston 1956, no writ). The policy of the Supreme Court has been to restrict application of the rule of privilege of communications between attorney and client, because it tends to prevent full disclosure of truth. *Hurley v. McMillan,* 268 S.W.2d 229, 232 (Tex.Civ.App.—Galveston 1954, writ ref'd n.r.e.).

 An analysis of the testimony in question reveals that it dealt with the question of whether Latham was an attorney for Duval at the date in question and if so, for what purpose he was employed. Under the great weight of authority, information concerning the factual circumstances surrounding the attorney-client relationship has no privilege, at least as long as disclosure does not threaten to reveal the substance of any confidential communications. Therefore, the attorney-client privilege does not encompass such nonconfidential matters as the terms and conditions of an attorney's employment, the purpose for which an attorney has been engaged, or any of the other external trappings of the relationship between the parties. *See Wirtz v. Fowler,* 372 F.2d 315, 322 n. 36 (5th Cir.1966); *In Re Semel,* 411 F.2d 195, 197 (3rd Cir.1969) cert. denied, 396 U.S. 905, 90 S.Ct. 220, 24 L.Ed.2d 181 (1969); *Colton v. United States,* 306 F.2d 633, 637 (2nd Cir.1962) cert. denied 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); *In re LTV Securities Litigation,* 89 F.R.D. 595 (N.D.Tex.1981); *Jim Walter Homes, Inc. v. Foster,* 593 S.W.2d 749, 752 (Tex.Civ.App.—Eastland 1979, no writ); *Stewart Abstract Co. v. Judicial Commission,* 131 S.W.2d 686, 690 (Tex.Civ.App.—Beaumont 1939, no writ); 97 C.J.S. *Witnesses* § 283(f) (1957); 81 Am.Jur.2d *Witnesses* § 215 (1976); 1 R. Ray, Texas Law of Evidence § 425 (Texas Practice 3rd ed. 1980). Following these guidelines, we do not think the questioned testimony was within the bounds of the attorney-client

privilege. The telegram itself, being directed to a third person, was clearly not privileged by virtue of the attorney-client relationship. R. Ray, Texas Law of Evidence, *supra.* Point of error five is overruled.

In point six, Duval urges error in the action of the trial court in refusing to allow it to interrogate intervenor's attorney and one of Alamo's attorneys concerning the existence of an asserted secret agreement between intervenors and Alamo to divide monies which would ultimately be obtained from Duval in the event Alamo and intervenors prevail in this suit.

■ Generally in Texas, information about settlement agreements is excluded from the jury. The rationale for the rule seems to be that such an agreement could be taken as an admission of liability, and a contrary rule would frustrate the policy favoring the settlement of lawsuits. *McGuire v. Commercial Union Ins. Co. of N.Y.,* 431 S.W.2d 347 (Tex.1968). However, in *General Motors Corp. v. Simmons,* 558 S.W.2d 855 (Tex.1977), the Court recognized an exception to that general rule. That exception applies when a plaintiff and one defendant settle a cause on an agreement that the settling defendant will receive back a percentage of what the plaintiff recovers from the other defendant. The reason for that exception is to allow a showing of a potential bias or interest on the part of witnesses for the settling defendant who actively has a financial stake in the success of the plaintiff's recovery and to prevent a false and misleading portrayal to the jury of the real interests of the parties and witnesses. That premise was again emphasized and applied by the Court in *City of Houston v. Sam P. Wallace And Co.,* 585 S.W.2d 669 (Tex. 1979).

In *Wallace,* Little, a co-plaintiff with the City of Houston, settled his case against the defendant Wallace after the completion of the evidence and prior to the submission of the case to the jury without notifying the City or the Court of the settlement. Throughout the trial, Little's position had been that Wallace was negligent; however, after the secret settlement and in his final summation, Little's counsel argued that Wallace should prevail. The Court noted that the argument led to an apparent jury belief that Little had been convinced of the error of his own contentions causing the jury to agree with Little and return a verdict against the City, and ordered a new trial because of "false and misleading portrayals to the jury of the real interests of the parties and witnesses."

■ Duval contends that the failure to allow it to pursue the question of whether a division agreement existed caused the same vice the Court perceived in *Wallace.* We do not agree. The basic question presented by Duval's suit is whether or not it was entitled to a credit upon the Alamo judgment for the proceeds of intervenor's policies. Even assuming, arguendo, the existence of such an agreement as that asserted by Duval, the interest of both Alamo and intervenors on the question presented by Duval's suit is identical. Neither Duval nor the jury could thus have been misled upon that question to the detriment of Duval. Therefore, the existence or non-existence of such an agreement was not relevant to Duval's suit and no reversible error was committed in excluding the tendered examination. *See Miller v. Bock Laundry Machine Co.,* 568 S.W.2d 648 (Tex.1977). Point of error six is overruled.

■ In point seven, Duval maintains the action of the jury in failing to find the existence of the oral agreement pertaining to Alamo insurance between it and Alamo was so against the great weight and preponderance of the evidence as to be manifestly unfair. Because Duval had the burden of proof on the issue in question, it must convince this Court that the jury's negative answer was so contrary to the overwhelming insight and preponderance of the evidence as to be clearly wrong and unjust. *Parrish v. Hunt,* 160 Tex. 378, 331 S.W.2d 304, 305 (1960). Consideration of this question invokes the fact finding power of the Court of Appeals and requires this Court to weigh all of the evidence and to remand the case for new trial if we conclude that the verdict is indeed so against

the great weight and preponderance of the evidence as to be manifestly unjust. *Traylor v. Goulding,* 497 S.W.2d 944, 945 (Tex. 1973).

In consideration of this point, a brief review of the pertinent evidence is necessary. Duval's witness Morris Ashby testified that he was executive vice-president of Duval during the time in question and that Duval was owned by Mr. and Mrs. Clinton Manges. In matters giving rise to the controversy in question he dealt with Ed Powell, who was president of Alamo, Tracy Smith, who was comptroller of Alamo, and Bob Powell who was manager of the Alice yard of Alamo. He testified as to a conversation in reference to the improvements and insurance that "both of us thought it was a good idea so if it burned down, they (Alamo) would be paid off and that would stop the dispute about the house," and that Duval would pay the insurance premiums. When queried as to whom the conversation was with, he said he "believed" it was with Tracy Smith. He informed Manges of the conversation. He also testified that Manges took out insurance with Aetna on the improvements for "what it was worth not what Alamo was claiming." George Wray, Jr. testified that he was a general insurance agent and that, as a result of a conversation with Ed Powell he wrote the insurance for Alamo on a "lien holder's interest" after obtaining a legal opinion that he could do so. He also testified the premiums on the policy were paid by Alamo.

John Canavan testified that he was the insurance agent who wrote the Aetna policy for Clinton Manges. He was not told there was other insurance on the premises. Sworn proofs of loss filed under the Manges policy negated the existence of "other insurance." Charles C. Collins testified that he was the vice-president of Alamo at the time in question and that he had never made an agreement with Ashby for Alamo to carry insurance for the mutual benefit of Alamo and Duval. He also stated that Ed Powell was deceased at the time of trial, that he knew of no agreement about insurance between Powell and Ashby but "he could have done it." He knew of no agreement between Ashby and Tracy Smith. Tracy Smith, comptroller of Alamo at the time in question, stated that he did not make the agreement with Ashby and he had no knowledge of any other official of Alamo who made such an agreement. He also testified that Ed Powell had met with Ashby several times and, with reference to an agreement about insurance proceeds "it would probably be Mr. Powell who would be the one to say whether they would or wouldn't do that."

We do not believe the verdict of the jury is so against the great weight and preponderance of the evidence as to be manifestly unjust. Point of error seven is overruled.

█ Duval, in its point of error two and Alamo, in its counterpoint seven, for different reasons, both attack the award of subrogation rights to intervenors. One prong of Duval's argument is that it was charged for intervenor's policies and therefore, intervenors, as its insurers, could not subrogate against it. The record does not support this allegation. There is no showing that premiums on the policies were even paid by or charged to Duval. The thrust of Duval's remaining argument is twofold. Initially, it contends that the first requirement for award of equitable subrogation to an insurer requires the existence of third party primarily liable for the fire loss. Since there is no fault in this fire on its part, it reasons, subrogation rights should not be awarded against it. Moreover, it says, even if equitable subrogation applies to a contractual obligation situation, since it is entitled to a credit upon its debt to Alamo for the insurance proceeds, the award of subrogation rights to intervenors results in an unjust enrichment.

█ We believe in Texas the right of subrogation is not limited to cases where the liability of the third person is founded in tort, but any right of the insured to indemnity will pass to the insurer. *F.H. Vahlsing, Inc. v. Hartford Fire Ins. Co.,* 108 S.W.2d 947, 950 (Tex.Civ.App.—San Antonio 1937, writ dism'd). We have heretofore held that Duval is not entitled to credit

upon the Alamo judgment for the insurance proceeds. Duval's point of error two is overruled.

■ We next consider whether Alamo is correct in its contention that intervenors should not have been awarded the subrogation right given them.

Alamo points out that there are two provisions in the policies dealing with subrogation. The first is contained among the basic conditions and reads:

This Company may require from the insured an assignment of all rights of recovery against any party for loss to the extent that payment therefor is made by this company.

The loss payable mortgage clause provides:

If this Company shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgage, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's right to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage.

Alamo argues that since the insurance proceeds were not sufficient to pay the judgment in full, intervenors were not entitled to subrogation rights unless it tendered to Alamo the amount of the judgment debt plus Alamo's costs, expenses and attorney's fees in collecting same. We do not agree.

Standard clauses, such as those here in question, providing for subrogation to the mortgagee's right of recovery have been consistently held valid and Texas courts have been especially friendly to the right of subrogation and have been zealous in upholding that right. *See Group Hospital Service, Inc. v. State Farm Ins. Co.,* 517 S.W.2d 897, 900 (Tex.Civ.App.—Eastland 1974, no writ); *Quincy Mutual Fire Ins. Co. v. Jones, supra.*

We think the contractual provisions in the policies under scrutiny are clear and valid. Under these provisions, intervenors had the option to pay Alamo the amount of the judgment debt in full and be entitled to an assignment thereof or be subrogated to Alamo's right of recovery on the debt to the extent of the amount paid by them. They chose to elect the subrogation option and are entitled to this right. Alamo's counterpoint of error seven is overruled. Alamo may be entitled to priority in the collection of its share of the judgment, including costs of collection. *See Ortiz v. Great Southern Fire & Cas. Ins. Co.,* 597 S.W.2d 342 (Tex. 1980); *Quincy Mutual Fire Ins. Co. v. Jones, supra; National Ben Franklin Fire Ins. Co. v. The Praetorians,* 67 S.W.2d 333 (Tex.Civ. App.—El Paso 1934, writ ref'd). However, that question is not preserved in this appeal and therefore not presented for our decision.

There being no reversible error, the judgment of the trial court is affirmed.