IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN





 





NO. 3-91-507-CV





DENNIS D. FLYNN AND PATIENCE S. FLYNN,



 APPELLANTS


vs.





PMI MORTGAGE INSURANCE CO.,



 APPELLEE


 




FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT



NO. 133,399-C, HONORABLE STANTON B. PEMBERTON, JUDGE



 




PER CURIAM

 This is an appeal from a default judgment. Appellee PMI Mortgage Insurance Co.
(PMI) instituted a deficiency suit against appellants Dennis D. Flynn and Patience S. Flynn. The
deficiency remained after PMI's assignor, Southwest Savings Association (Southwest), foreclosed
a deed of trust lien against real property the Flynns owned. PMI took a default judgment against
the Flynns after they failed to file timely an answer or other response. No record was made of
the hearing. The Flynns filed a motion for new trial and to set aside default judgment, and a
motion to set aside the deemed admissions. The trial court overruled the Flynns' motion for new
trial. A record of this hearing was made. (1) No findings of fact or conclusions of law were requested or filed. In a single point of error the Flynns assert the trial
court erred in denying their motion to set aside the default judgment and for new trial. We will
affirm the trial court's judgment.



STANDARD OF REVIEW


 In reviewing the trial court's decision, we should reverse the judgment and order
a new trial only if the record reveals that the trial court clearly abused its discretion in overruling
the Flynns' motion for new trial. Strackbein v. Prewitt, 671 S.W.2d 37, 38 (Tex. 1984). When
applying the abuse of discretion standard, the reviewing court's inquiry should focus on whether
the trial court acted without reference to any guiding rules and principles. Another way of stating
the test is whether the act was arbitrary or unreasonable. The mere fact that a trial court may
decide a matter within its discretionary authority differently from what a reviewing court would
decide in similar circumstances does not demonstrate that an abuse of discretion has occurred. 
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476
U.S. 1159 (1986). A mere error of judgment is not an abuse of discretion. Loftin v. Martin, 776
S.W.2d 145, 146 (Tex. 1989). Additionally, in reviewing the judgment of the trial court when
there are no findings of fact and conclusions of law requested or filed, this Court must uphold the
judgment on any legal theory that finds support in the evidence. Strackbein, 671 S.W.2d at 38.

 A default judgment should be set aside and a new trial ordered in any case in which
the defendant's failure to answer before judgment was not intentional, or the result of conscious
indifference on his part, but was due to a mistake or accident; provided the motion for a new trial
sets up a meritorious defense and is filed at a time when the granting thereof will occasion no
delay or otherwise work an injury to the plaintiff. Bank One, Texas, N.A. v. Moody, 35 Tex.
Sup. Ct. J. 616, 617 (April 15, 1992) (citing Craddock v. Sunshine Bus Lines, Inc., 133 S.W.2d
124, 126 (Tex. 1939)).



THE EVIDENCE


 Where factual allegations in a movant's affidavit are not controverted, a trial court
must determine a conscious-indifference question in the same manner as a claim of a meritorious defense. It is sufficient that the movant's motion and affidavits set forth facts which, if true,
would negate intentional or consciously indifferent conduct. Strackbein, 671 S.W.2d at 38-39. 
Only a very slight excuse is needed. See Craddock, 133 S.W.2d at 125 (discussing Dowell v.
Winters, 20 Tex. 793 (1858)).



Factual Allegations.

 Attached to each citation served on the Flynns was a copy of the petition and of
plaintiff's first request for admissions. (2) We will recite the relevant uncontroverted factual
allegations set forth in the Flynns' affidavits in support of their motion for new trial.



1. Dennis Flynn's Affidavit.

 In his affidavit, Dennis Flynn states that, upon being served, he immediately
consulted a Virginia attorney, and delivered to him the citations. During Dennis Flynn's
consultation, the Virginia attorney telephoned James O. Cure, (3) an attorney in Temple, Texas, who
had previously represented Dennis Flynn. Dennis learned that Cure would require a $1000
retainer to take the case. After the Virginia attorney completed the telephone conversation with
Cure, Dennis instructed the Virginia attorney to retain Cure to file an answer in a timely manner. 
Dennis advised the Virginia attorney that he had to sell some stocks in order to raise the retainer. 
Dennis left the attorney's office assuming that the matter would be taken care of and that an
answer would be filed for both him and his wife in a timely manner.



2. Patience Flynn's Affidavit.

 Patience Flynn's affidavit recites that she gave her copy of the citation and
attachments that were served on her to her husband and requested that he consult the Virginia
attorney about the matter. She did not accompany her husband to the attorney's office. When
Dennis returned from the attorney's office, he advised her that the attorney was going to retain
Cure to file an answer in a timely manner. Patience assumed the matter would be taken care of
and that an answer would be filed for her and her husband in a timely manner. 

 The default judgment was signed before Dennis paid the $1000 retainer to the
Virginia attorney and before an answer was filed. In their affidavits, the Flynns state that they
have no legal training and virtually no understanding of court procedure. Neither understood that
the retainer was required to be paid before any action would be taken.



DISCUSSION



A. Existence of Attorney-Client Relationship.

 We take as true the factual allegations that (1) Dennis Flynn instructed the Virginia
attorney to retain Cure to timely file an answer; and (2) the Flynns assumed the matter would be
taken care of properly. While they do not expressly say so, the Flynns' belief that the Virginia
attorney would handle the matter implies their belief that an attorney-client relationship existed
between them and the attorney.

 The threshold question is whether there is sufficient evident to support the
conclusion that an attorney-client relationship existed between the Flynns and the Virginia attorney
when Dennis Flynn left the attorney's office after the initial meeting. (4) The relationship of attorney
and client is one of principal and agent and may be implied from the conduct of the parties. Texas
Employers Ins. Ass'n v. Wermske, 349 S.W.2d 90, 93 (Tex. 1961); Duval County Ranch Co. v.
Alamo Lumber Co., 663 S.W.2d 627, 633 (Tex. App. 1983, writ ref'd n.r.e.). The creation of
an agency relationship depends upon a meeting of the minds in establishing the agency. The
consent of both the principal and the agent is necessary and may be implied. The principal must
intend that the agent act for him; the agent must intend to accept the authority and act on it. The
intention of the parties must find expression in the words or conduct between them. Grissom v.
Watson, 704 S.W.2d 325, 326 (Tex. 1986).

 The factual allegations supporting the existence of an attorney-client relationship
are that: (1) Flynn consulted the Virginia attorney about the PMI lawsuit; (2) Dennis Flynn
delivered the citations and attachments to the Virginia attorney; and (3) Dennis instructed the
Virginia attorney to retain Cure to file timely an answer. The Flynns state that the Virginia
attorney did not forward the petitions to Cure. From this factual allegation, we presume Dennis
Flynn left the court documents with the Virginia attorney. In addition to these express factual
allegations, the Flynns inferentially allege that the Virginia attorney did not tell Dennis at their
initial meeting that he would not represent them, or that neither he nor Cure would act until the
retainer was received. (5) Otherwise, there is no basis for the Flynns' statement that they believed
the answer would be filed in a timely manner. These facts, if true, are sufficient to support the
existence of an attorney-client relationship between the Flynns and the Virginia attorney, the
representation encompassing, at the least, retaining Cure to file a timely answer. 


B. The Actions of Both the Flynns and Their Attorney are Considered

 When Determining Whether the Failure to Answer was Intentional or

 Due to Conscious Indifference.


 When parties rely on their agent or representative to file an answer, they must show
that the failure to answer was not intentional or the result of conscious indifference of either the
parties or their representative. Estate of Pollack v. McMurrey, No. D-1325, slip op. at 3 (Tex.,
May 6, 1992); Grissom, 704 S.W.2d at 327 (citing Harris v. Lebow, 363 S.W.2d 184, 186 (Tex.
Civ. App. 1962, writ ref'd n.r.e.); Carey Crutcher v. Mid-Coast Diesel Servs., 725 S.W.2d 500,
502 (Tex. App. 1987, no writ). An attorney's omissions and commissions are regarded as the
acts of the clients whom he represents. Texas Employers Ins. Ass'n., 349 S.W.2d at 93.



1. Answer Due Date.

 The Flynns were served with citation on June 11, 1991. The citation recites that
the answer is due "at or before 10 o'clock A.M. of the Monday next after the expiration of 20
days after the date of service." Therefore, the answer had to be filed by July 8, 1991. The
Flynns do not allege that they, or the Virginia attorney, did not know the answer due-date,
misconstrued the date, or forgot about the matter. See Texas Iron & Metal Co. Inc. v. Utility
Supply Co., 493 S.W.2d 545, 546 (Tex. Civ. App. 1973, writ ref'd n.r.e.) (failure to timely
answer because defendant's agent misconstrued language in citation specifying answer due-date
held accident or mistake); Jackson v. Mares, 802 S.W.2d 48, 51 (Tex. App. 1990, writ denied)
(evidence attorney forgot about citations does not establish that failure to answer was intentional
or the result of conscious indifference). In the absence of an allegation to the contrary, we
conclude that the Flynns and the Virginia attorney knew that the answer had to be filed by July 8,
1991.



2. Knowledge Cure Required Retainer to Take the Case.

 In his affidavit Dennis states that while he was at the Virginia attorney's office, he
learned that Cure required a $1000 dollar retainer to "take the case." The Flynns did not deliver
a retainer to the Virginia attorney until after the default judgment was signed on August 9, 1991,
fifty-nine days after they had been served with citation. Although Dennis told the Virginia
attorney that he would have to sell some stocks to raise the retainer, he does not state that he
actually made any effort to do so. Dennis fails to state what efforts, if any, he expended to raise
the retainer before entry of the default judgment.



3. Failure to Timely File Answer Was Due to Conscious

 Indifference, Not Accident or Mistake.

 The Flynns state they did not know that they had to pay the retainer before any
action would be taken. However, the Flynns' affidavits do not allege that the Virginia attorney
did not know that the retainer had to be paid before any action would be taken. Furthermore, an
attorney's duty to answer generally attaches when he learns a client has been served and the client
requests the attorney to file an answer or to see that an answer is filed. See Estate of Pollack, No.
D-1325, slip op. at 4. Dennis Flynn's affidavit establishes that the Virginia attorney knew the
Flynns had been served and that Dennis Flynn requested the attorney retain Cure to timely file
an answer. From the factual allegations contained in the Flynns' affidavits, it appears the Virginia
attorney simply refrained from acting to retain Cure until he received the retainer. This is not an
accident or mistake within the meaning of Craddock. See Graham v. Truck Equip. Co. of
Amarillo, 413 S.W.2d 778, 779 (Tex. App. 1967, no writ) (Craddock rule not satisfied when
attorney refrained from having answer filed until defendant paid attorney a portion of his fee).

 On this record we cannot say that the trial court abused its discretion when it denied
the motion for new trial. The Flynns have not set forth facts which, if true, show their failure to
answer was not due to conscious indifference, but was due to accident or mistake. Because
appellants have not satisfied the first requirement of the Craddock rule, we need not address
whether they have satisfied its remaining requirements. Appellants' second point of error is
overruled and the trial court's judgment is affirmed. 



[Before Chief Justice Carroll, Justices Aboussie and B. A. Smith; 

 Chief Justice Carroll not participating]

Affirmed

Filed: May 13, 1992

[Do Not Publish]

 
1. No evidence was introduced at the hearing on the motion for new trial. The only
evidence in support of the motion for new trial is the Flynns' affidavits with attachments.
2. The Flynns point out that neither of them was served with an original request for
admissions. Both copies of the requests for admissions served were directed to Patience
Flynn. The Flynns allege that Dennis never received a request for admissions directed to him
in his name. The cover sheet of the request recites that the "admissions" shall be served upon
the counsel of record and filed with the court or said admissions shall be deemed admitted. 
The Flynns argue that the cover sheet should instruct that it is the "answers" to admissions
that shall be served and filed. The cover sheet also instructs that "you are required to supplement
your answers to interrogatories."


 The Flynns failed to answer, or object to, the request for admissions. Therefore,
each matter of which an admission was requested is deemed admitted. Tex. R. Civ. P. Ann. 169
(Supp. 1992). The Flynns filed a motion to set aside the deemed admissions, which the trial court
did not rule on. To preserve a complaint for appellate review, it is necessary for the complaining
party to obtain a ruling. Tex. R. App. P. Ann. 52 (Pamph. 1992). Additionally, the Flynns have
failed to bring forward a point of error alleging that the trial court erred by not setting aside the
deemed admissions. Tex. R. App. P. Ann. 74(d) (Pamph. 1992). The Flynns' sole point of error
attacks the trial court's denial of the motion for new trial. The Flynns have waived any error
regarding the requests for admissions. Regardless, we do not rely on the deemed admissions in
our disposition of this appeal.
3. Cure is representing the Flynns on appeal.
4. Otherwise, their failure to employ an attorney and make sure that he understands he
is to see that an answer is timely filed, unless they expect to represent themselves, may
constitute inexcusable negligence. See Brothers Dep't. Store, Inc. v. Berenzweig, 333 S.W.2d
445, 447 (Tex. Civ. App. 1960, writ ref'd n.r.e.). 
5. Dennis paid the Virginia attorney the retainer after default judgment was taken. Cure
then filed an answer. The record is silent regarding whether the Virginia attorney kept any
of the retainer or was otherwise paid fees by the Flynns.